**Donald BLODGETT, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Sept. 11, 1973.

Jay H. Conner, Wilmington, for defendant below, appellant.

William E. Wright, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

HERRMANN, C. J., and CAREY, J., and BROWN, Vice-Chancellor, sitting.

BROWN, Vice-Chancellor.

Donald Blodgett was charged in the Superior Court with assault with intent to commit robbery in violation of 11 Del.C. § 812 and conspiracy to commit robbery in violation of 11 Del.C. § 105. He was tried jointly on both charges with three codefendants, Joseph West, Cynthia Floyd and Sandra Wilhelm. The defendants Floyd and Wilhelm were acquitted of both charges. The defendant West was convicted of both charges. Blodgett was acquitted of assault, but found guilty by the jury of the charge of conspiracy.

Blodgett brings this appeal on two grounds. First, he claims the trial court erred in allowing certain portions of a

written statement made by the defendant West to be read into evidence, thereby inferring guilt and involvement on the part of Blodgett. Secondly, he contends that a conviction of conspiracy to commit robbery is inconsistent with his acquittal of the robbery charge, and therefore cannot stand.

## I.

Blodgett bases his first contention solely on the authority of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476 (1968). In *Bruton* it was held that the admission of a codefendant's confession that implicated the defendant at a joint trial denied him the right of cross-examination guaranteed by the 6th amendment to the Constitution of the United States and this constituted prejudicial error even though the trial court gave clear instructions to the jury that the confession could only be considered with regard to the codefendant.

In the case here, the State deleted that portion of West's statement which specifically mentioned Blodgett as well as that which made reference to the fact that Blodgett was driving the car in which West and others were riding before the robbery and in which they fled the scene after its commission. After these deletions, the portion of West's statement which was offered against West and read * to the jury was as follows:

"Me, Jimmy Simmons . . . Cora Potts . . . all met at Jimmy's house at about 11 P.M. on Friday, the seventh of July . . . and started riding around. At that time, Jimmy had a 25 cal automatic tucked in his pants . . . we came to Phila Pike and then drove down Phila Pike until we passed a 7-eleven store. Jimmy said, 'Let's try that store'. We drove down a side street next to the store and me and Jimmy got out. Me and Jimmy walked to the phone booth in front first and then we went inside. We bought a pack of cigarettes and an ice cream cone and left. Then about three minutes later, we went back in, and Jimmy asked him for a match. The guy that worked there went behind the counter to get it and when he handed Jimmy the matches, Jimmy pulled the gun from under his shirt. The guy said, 'I give, I give'. The next thing I heard was somebody holler, 'State Police' . . . I ran to the car which was parked around the corner, and drove off . . . ."

It thus appears that the portion of West's statement that was offered against him and read to the jury contained no reference to Blodgett whatsoever, but was an admission by West of what he and Simmons did.

A fifth person who was involved in the incident, Cora Potts, testifying for the State under a grant of immunity, clearly indicated that Blodgett was with the group that evening and, at least at one point, was driving the car. Her testimony further placed him at the scene of the robbery at the time of its commission. Blodgett contends that when this prior testimony of Cora Potts is coupled with the statement of West, even as expurgated, the jury could conclude that West was also referring to Blodgett when he used the word "we" in his written statement.

█ The problem with this argument, however, is that it is the direct testimony of Cora Potts that involves Blodgett, not the deleted statement. *Bruton* prohibits the use of an inculpatory statement of a codefendant, since to do otherwise would be to place into evidence the incriminating accusations of a codefendant in such a manner as to deny the right of cross-examination to the defendant against whom they are offered. The portion of West's statement offered against West does not incriminate or even refer to Blodgett. The

---

* It bears emphasis to note that the expurgated statement was read to the jury—and not viewed by it.

testimony of Cora Potts does refer to Blodgett and does tend to incriminate him.

If, taking away the testimony of Cora Potts, there would have been no evidence at all as to Blodgett's involvement, it is difficult to see how the deleted statement could be branded as incriminating to Blodgett. We are therefore of the opinion that *Bruton* does not apply to the facts of this case, and that consequently no error was committed as to Blodgett by the admission of the deleted statement against West.

## II.

As to the conspiracy, Blodgett asserts that the State offered no evidence of any planning of the robbery or any advance agreement between the defendants to participate in it. It is contended that all the evidence shows is that Blodgett was driving the car that evening and that he drove it to the location where the robbery was committed by West and Simmons. Presumably, he also drove the car away after the offense had been committed. Since Blodgett was acquitted of the charge of assault with intent to commit robbery, it is argued that the jury found that he was not an active participant and that consequently he was acquitted of having committed any overt act on which the conspiracy charge was based. Blodgett cites United States v. Moloney, 200 F.2d 344 (7th Cir. 1952) as authority for the proposition that where a defendant is acquitted of the overt act, he cannot be convicted of conspiracy to commit it in the absence of evidence as to active planning or complicity.

However, this Court has recently dealt with this issue in Wilson v. State, Del. Supr., 305 A.2d 312 (1973). There the action of the trial judge in refusing to instruct the jury that, in order to convict for conspiracy, it was necessary for the conspirators to commit an "overt act", was specifically approved. At common law, no overt act is necessary since the agreement alone constitutes the conspiracy, and since Delaware follows the common law unless changed by statute, and since there has been no change by either statute or court decision which would require proof of an overt act, the failure to show such an overt act does not, standing alone, preclude a conviction for conspiracy. Wilson v. State, supra.

■ On the contrary, it is not necessary to show an overt act, or that multiple defendants actually agreed in terms to a common design and to pursue it by common means; but if from the evidence it is proved that the defendants pursued, by their acts, the same object, so as to complete it, the jury will be justified in the conclusion that they were engaged in a conspiracy. And this may be proved by circumstantial, as well as direct evidence, "that is, by facts and circumstances from which the existence of a conspiracy may be inferred." State v. Cole, Del.Gen.Sess., 1 W W Harr. 279, 114 A. 201 (1921); Wilson v. State, supra.

■ We hold that there is sufficient evidence in the record from which the jury could have reached such conclusion as to Blodgett, and under the circumstances, this result is not fatally inconsistent with his acquittal on the charge of assault with intent to commit robbery.

Accordingly, the judgment below is affirmed.