Robert H. SAUNDERS, Defendant
below, Appellant,

v.

STATE of Delaware, Plaintiff
below, Appellee.

Supreme Court of Delaware.

Submitted Sept. 18, 1978.

Decided March 30, 1979.

Morton Richard Kimmel, and Michael Weiss of Kimmel & Spiller, P. A., Wilmington, for defendant below, appellant.

Fred S. Silverman, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., McNEILLY, J., and BROWN, Vice-Chancellor.

McNEILLY, Justice:

Defendant, Robert H. Saunders, appeals his convictions of murder in the first degree, conspiracy first degree, possession of a deadly weapon during the commission of a felony, burglary third degree, theft, and conspiracy second degree. Defendant also appeals from the Superior Court's declaration of defendant as an habitual criminal and his corresponding sentence to life imprisonment without benefit of probation or parole. Defendant raises ten contentions for reversal which we will consider seriatum. Finding no reversible error in these contentions we affirm.

I

The victim, Joseph L. (Spoon) Johnson, was murdered on Delaware Route 9, River Road, approximately four miles north of Delaware City, Delaware. According to the testimony of three accomplices who were permitted to plead guilty to a lesser offense in exchange for their trial testimony, the victim was murdered shortly after defendant, the victim, and the three of them burglarized a small bank in Delaware City. As the car in which they were riding approached a bridge over the Red Lion Creek, between Delaware City and Wilmington, defendant Saunders is said to have shot the victim Johnson at close range with a .38 caliber, short barrelled revolver. The bullet broke into three fragments as it passed through the victim's skull, destroying the victim's brain and causing instantaneous death. Accomplice Eron M. Davis, in whose car they were riding, brought the car to a stop. Defendant then ordered Davis and

the other two accomplices, Joseph F. Wood and William McK. Jones, to each fire a shot into the victim's body. Defendant next ordered Davis, Wood and Jones to throw the body into Red Lion Creek, after which they continued on to Wilmington where they destroyed the murder weapon and divided the spoils of the bank burglary.

## II

■ Defendant first contends that in the face of the uncorroborated and contradictory testimony of accomplices, Davis, Wood and Jones, his own denials, and the unassailed testimony of an alibi witness, the convictions must be reversed. *Bland v. State,* Del.Supr., 263 A.2d 286 (1970). In relying on *Bland* defendant points to twelve inconsistencies in the testimony of the three accomplices. Indeed there are inconsistencies in the testimony of the accomplices as to details, but all three testified that it was the defendant who murdered the victim "Spoon" Johnson with a .38 caliber, short barreled revolver after they had all participated in burglarizing the bank and while they were riding together in the Davis car to Wilmington.

Unlike the case before us, the inconsistencies in *Bland* involved, among other things, disagreement as to the number of participants in the crime and the presence of defendant at all times during the crime. These discrepancies, together with certain defense testimony and the Court's dissatisfaction with the language of the jury instructions pertaining to credibility of accomplice testimony, provided the basis for the Court's reversal in *Bland.* Where an accomplice has been permitted to plead to a lesser offense, the Court in *Bland* suggested, and the Trial Judge in this case adopted, language directed to accomplice testimony, i. e., " 'For obvious reasons, the testimony of an alleged accomplice should be examined by you with suspicion and great caution.' " Under the circumstances, we find no merit to defendant's contention.

## III

■ Defendant contends the Court below committed reversible error by admitting into evidence five statements of the three accomplices under 11 *Del.C.* § 3507(a).* The grounds for this contention are that the statements denied defendant's right of confrontation in violation of the Sixth and Fourteenth Amendments of the Federal Constitution; that the statements are involuntary as a matter of law since they are self serving results of plea bargaining; that they are cumulative and prejudicial; and that the statements as admitted into evidence violated the rule of *Bruton v. U. S.* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Blodgett v. State,* Del.Supr., 310 A.2d 628 (1973), requiring the Court to strike references to the defendant from co-defendant's confession.

Each of the accomplices testified that his statements to the police were voluntary; they each testified and were extensively cross-examined; no *Bruton* or *Blodgett* problem is present in this case; and the statements were properly submitted as evidence to the jury during deliberations.

## IV

Defendant contends the Trial Court committed prejudicial error and violated defendant's constitutional rights in accordance with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Jenkins v. State,* Del.Supr., 305 A.2d 610 (1973), by not granting a mistrial when it was learned at the end of the State's case that accomplices Davis and Wood had made exculpatory statements that were not provided to the defense in response to an appropriate pre-trial discovery motion. The statements allegedly concern a "critical issue" of motive for someone other than defendant to kill the victim "Spoon" Johnson. Defendant claims that, by introducing a new issue of motive in the case, the state-

* 11 *Del.C.* § 3507(a) reads as follows:

"(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who

is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."

ments would have been relevant to cross-examination of Wood and Davis and, thus, the State was required to produce the statements under the rule of *Brady*.

■ In *Brady,* the Supreme Court held that a prosecutor must disclose to the defense evidence in his possession that would be "material" to the defense. In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court held, however, that unless a prosecutor's failure to disclose is sufficiently significant so as to result in the denial of the defendant's right to a fair trial, the prosecutor does not violate the constitutional duty of disclosure. The mere possibility that an item of undisclosed information might have aided the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense unless the undisclosed evidence would have created the "reasonable doubt of guilt that did not otherwise exist."

■ In this case the defendant knew of the statements at least five months before he disclosed them to his attorney at the end of the State's case in chief. In fact, defendant had used the statements in preparing his defense to a totally unrelated bank robbery charge pending against him in Pennsylvania. His attorney in this case had no previous knowledge of the statements, nor did the prosecutor or his chief investigative officer who had witnessed one of the statements for the F.B.I. at the time without knowing the substantive contents. After taking testimony from both Wood and Davis concerning the statements, the Trial Judge ruled they were not critical to the issues in this case and not material under *Brady*. We agree.

### V

Defendant contends that he was denied a fair trial because he is black and only eight of the one hundred ten people on the petit jury panel in his case were also black; because the only black called to the box was peremptorily challenged; because he was not allowed twenty peremptory challenges; and because he was foreclosed by the Trial

Judge from injecting an element of race in his closing remarks to the jury.

■ Defendant's reliance upon *People v. Wheeler,* Cal.Supr., 148 Cal.Rptr. 890, 583 P.2d 748 (1978) in support of his jury selection contention is misplaced. In *Wheeler* black defendants were convicted of murdering a white victim. During the course of jury selection the State utilized peremptory challenges to exclude all blacks although each one excluded was previously passed for cause. The defense objected during jury selection and established a prima facie showing to the satisfaction of the Trial Court that the State's peremptory challenges constituted a systematic effort to exclude blacks as a class. The burden thereupon shifted to the State to show that the sole effort in challenging all blacks was not for the purpose of excluding blacks as a group. The State was unable to meet its burden of proof and the convictions were reversed.

That is not the case here. Only one black was called and peremptorily challenged. There is no evidence in the record of any impropriety in challenging the one black prospective juror. As stated in *Wheeler,* peremptory challenges "are not 'open to examination' unless and until on a timely motion the Trial Court is satisfied there is a prima facie showing that jurors are being challenged on the sole ground of group bias . . . ." 583 P.2d at 767 n. 32, 148 Cal. Rptr. at 908 n. 32.

■ None of the other contentions are tenable. His case was not a capital one at the time entitling him to twenty peremptory challenges. Moreover, there is no evidence of racial overtones in the case; thus, the Trial Judge properly foreclosed defendant from injecting race into his closing argument.

### VI

The defendant complains that because of the Trial Judge's involvement in the trial, by questioning witnesses and advising the prosecutor on the requirements necessary to

establish the admissibility into evidence of statements and other documentary evidence, the Court may have lost its "cloak of impartiality" in the eyes of the jury. The comments of the Trial Judge in overruling defense counsel's objections to the Court's involvement are quite pertinent to this complaint. The Trial Judge stated:

> "The jury is outside the presence of our hearing now and this is a voir dire-type examination to determine, one, the admissibility of the photographs and the expertise of this doctor to render opinions that he will render in front of the jury if I allow it."
>
> \*   \*   \*   \*   \*   \*
>
> ". . . when I was questioning Mr. Wood, it seemed to me that those questions were seeking the truth. Some of them were most favorable to the defense. With regard to this sidebar that I called, the Court was concerned about prejudice to the defendant and wants a proffer."
>
> "I understand a deep concern of defense counsel about protection of his client's interest, and I think the record should reflect what the facts are. I don't think a red herring should be placed in the record of this case merely because the defense counsel makes an assertion in the record. I think that's it."

██ We find no abuse of discretion in the Trial Judge's involvement herein complained of. Neither do we find any abuse of discretion in the Trial Judge's refusal to provide defendant with the services of an investigator, which is defendant's next allegation of error. We find no support in law or in practice for the granting of such a request at state expense in a criminal case of this nature.

## VII

█ Defendant contends the Trial Judge committed prejudicial error by refusing to instruct the jury on assault because the evidence showed that the victim had died of multiple gunshot wounds; that the defendant was only one of four persons who fired bullets at or near the victim's body; and that only three bullets struck the victim.

This contention has no merit. In the first place defendant's defense was alibi, not that he fired at the victim and missed. Second, the three eyewitnesses testified that defendant aimed a .38 caliber revolver at the back of the victim's head and killed him by firing a bullet into his brain. In addition, the medical examiner who performed an autopsy testified that the shot which was fired at close range from the back of the victim's head was "lethal". No instruction to the jury on the law of assault was appropriate in this case. Defense counsel also complains that the Court should have instructed on the law of conspiracy as requested, but he does not complain that the actual charge was improper or inadequate. We find no error of law or abuse of discretion in the instructions as given.

## VIII

██ In support of defendant's motion for a new trial on the ground of newly discovered evidence, six affidavits of inmates of the Delaware Correctional Center were filed relating to the affiants' conversations with Davis, Wood and Jones showing concerted efforts to "pin" the murder on defendant Saunders. According to the affidavits, the three accomplices, Davis, Wood and Jones had conversations with the affiants admitting that defendant was neither involved in the plan to kill or in the actual murder of the victim, "Spoon" Johnson. The accomplices' efforts to "pin" the murder on defendant provided a major contention during trial. Defendant contends, however, that the newly discovered evidence is not merely cumulative and tends to show that accomplice Davis and his girlfriend made a trip to Virginia to kill "Spoon" Johnson's girlfriend.

The Trial Judge, following an evidentiary hearing on defendant's motion for a new trial, by letter opinion stated:

> "Defendant's motion for a new trial based on newly discovered evidence is denied."
>
> "All of the evidence presented by the Defendant to support his motion was

merely cumulative of evidence presented at his trial, was impeaching type evidence and not material. Even though the Defendant placed great reliance on the allegedly new evidence of the automobile trip South and its purpose, the Court is convinced this was cumulative in part and its inclusion at a new trial would not change the results of the present trial."

We agree.

## IX

■ It is next contended that there is insufficient evidence in the record to sentence defendant as an habitual criminal under 11 *Del.C.* § 4214.**

The Trial Judge held an evidentiary hearing on the Attorney General's habitual offender' proceeding against the defendant over defendant's objection based on the allegedly improper motive of the Attorney General and the allegedly uncontroverted fact that defendant was previously sentenced in 1962 as an habitual criminal. In reply to questioning under oath, the prosecutor stated as follows his reason for proceeding against defendant as an habitual offender and not against the three accomplices who each had multiple felony convictions:

"Primarily his criminal record (defendant, Saunders). In my experience it is the longest criminal record I've seen as a prosecutor. It is the most involved . . and the number of years he's been involved in the criminal justice system as a defendant."

As to the defendant's previous sentencing as an habitual offender, the supporting record referred to by defendant shows that defendant was charged with being an habitual offender, but no disposition is shown.

The State asserts that defendant has never been sentenced as an habitual criminal. On the basis of the record before us, we accept that assertion as true.

Following the evidentiary hearing resulting in the Court's finding the defendant Saunders to be an habitual criminal, the Trial Judge's findings of fact were as follows:

"Based on the evidence produced at this hearing and the live testimony and the records presented to the Court, the Court finds as follows:

In the exhibit marked State's Exhibit 13, which is the business records of the Presentence Office of this court, under the tab marked sixteen, the defendant, Robert H. Saunders, born 12–2 1939, male negro, pled guilty to four felonies; they being Indictments No. 526, 527, 528, 529; three of them being burglaries and one being larceny of a motor vehicle.

Those facts are corroborated by State's Exhibit No. 2 and State's Exhibit No. 1.

** 11 *Del.C.* § 4214 provides in pertinent part:
"(a) Any person who has been 3 times convicted of a felony, other than those which are specifically mentioned in subsection (b) hereunder, under the laws of this State, and/or any other state, United States or any territory of the United States, and who shall thereafter be convicted of a subsequent felony of this State is declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, in imposing sentence, may, in its discretion, impose a life sentence upon the person so convicted."
"(b) Any person who has been 2 times convicted of a felony or an attempt to commit a felony hereinafter specifically named, under the laws of this State, and/or any other state, United States or any territory of the United States, and who shall thereafter be convicted of a subsequent felony hereinafter specifically named, or an attempt to commit such specific felony, is declared to be an habitual criminal, and the court in which such third or subse-

quent conviction is had, in imposing sentence, shall impose a life sentence upon the person so convicted unless the subsequent felony conviction requires or allows and results in the imposition of capital punishment. Such sentence shall not be subject to the probation or parole provisions of Chapter 43 of this title."
Such felonies shall be:

| Section | Crime |
| --- | --- |
| 803 | Arson in the first degree |
| 826 | Burglary in the first degree |
| 825 | Burglary in the second degree |
| 636 | Murder in the first degree |
| 635 | Murder in the second degree |
| 632 | Manslaughter |
| 783 | Kidnapping in the second degree |
| 783A | Kidnapping in the first degree |
| 613 | Assault in the first degree |
| 763 | Rape in the second degree |
| 764 | Rape in the first degree |
| 766 | Sodomy in the first degree |
| 832 | Robbery in the first degree |

The record also reflects, through the presentence reports and through State's Exhibit No. 3, the pleas of guilty to two charges of uttering forged instrument, in violation of Title 11, Section 543, Subsection 5 of the Delaware Code that preceded our existing code. That Exhibit 12—excuse me—13, under tab fourteen indicates a plea of guilty to two charges of forgery made by Robert H. Saunders, Jr., 449 South Buttonwood Street, born 12–2 1939; he being a negro male, both in violation of Title 11, Section 543, Subsection 5 of previous Code. That on 4–27–61, the defendant entered pleas of not guilty, went to trial before a jury, and was found guilty on 1–5–62 of burglary fourth degree in 414 Criminal Action, 1961, 415 Criminal Action, 1961, and 413 Criminal Action, 1961; all in violation—excuse me—two burglaries in violation of 11 Delaware Code, Section 395; that is, the Code preceding our present Code, and—I want to correct that.

With regard to 414 Criminal Action, 1961, and 415 Criminal Action, 1961, the defendant went to trial, was found guilty as to both of those burglaries in the fourth degree; both being felonies under a Criminal Code of this State; in particular, being violations of 11 Delaware Code, Section 395. That being confirmed and corroborated by State's Exhibit No. 6.

And State's Exhibit No. 9 indicating that the defendant pled guilty to two charges of burglary of a fourth degree under our original statute; that is, the statute preceding our present code; they being Indictments No. 157 and 158. And he entered pleas of guilty to those two charges.

And State's Exhibit 12 indicating a plea of guilty to the charge of robbery in violation of 18 U.S.C. Section 4205, Subsection 2; that being a felony against the laws of the United States.

And State's Exhibit No. 10 being a plea of guilty by the same defendant, Robert Harlum Saunders, to a charge in violation of Title 18, United States Code, Section 1001; said plea being to an offense of a felony.

The Court finds, as a result of the evidence adduced at this trial, that the provisions of Section 4215 and 14 of the Delaware Code have been met by the State, proving the defendant to have been convicted previous to his present conviction of murder in the first degree and related charges, which were tried in November of 1976, of felonies exceeding the number three."

The Trial Judge's findings are supported by substantial evidence in the record. We find no error of law nor abuse of discretion in the habitual criminal proceedings.

X

The defendant's final allegations of error are that: (1) a copy of the jury instructions should have been provided for the jury during deliberations; (2) a mistrial should have been granted when accomplice Davis testified that he spoke with defendant while incarcerated, making it prejudicially apparent to the jury that defendant was incarcerated; (3) the Trial Judge and prosecutors should have been disqualified because they had participated previously in other criminal proceedings involving defendant and were biased; and (4) the Trial Court should have permitted defendant to be examined by his private psychiatrist.

Nothing appears in the record to support these contentions nor does defendant cite any authorities in support of his arguments. We find no error of law nor abuse of discretion in the Trial Judge's decisions on each of the points herein raised.

AFFIRMED.