**Luis MORALES, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 233, 1996.**

Supreme Court of Delaware.

Submitted: May 8, 1997.
Decided: July 10, 1997.

Joseph M. Bernstein, Wilmington, for Appellant.

Timothy J. Donovan, Jr, and Paul R. Wallace (argued), Deputy Attorneys General, Department of Justice, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court en Banc.

VEASEY, Chief Justice.

In this appeal, we consider whether guilty pleas entered in conjunction with plea bargains made in another jurisdiction and docu-

mented as such only by indictments and docket sheets may provide the basis for an adjudication of habitual criminality under 11 *Del.C.* § 4214(b). We hold that these records are insufficient to establish defendant's prior convictions for the purpose of sentencing a defendant to life in prison under the habitual criminal statute. We also consider the defendant's claim that the State's evidence was insufficient as a matter of law to sustain his conviction of possession with intent to deliver a narcotic. We affirm defendant's conviction of possession with intent to deliver, but we set aside his sentencing as an habitual offender. Accordingly, we remand this case for resentencing.

### Facts and Procedural History

On June 19, 1995 and July 12, 1995, Thomas Jannuzio, an undercover detective for the Wilmington Police Department, purchased heroin from the defendant below-appellant, Luis Morales, at his first floor apartment at 101 N. Van Buren Street, Wilmington, Delaware. On both occasions, Detective Jannuzio asked to buy three bags of heroin in exchange for forty dollars, and used marked "buy money" to purchase the heroin.

Following the July 12, 1995 transaction, Detective Jannuzio radioed Detective Michael Rodriguez, also of the Wilmington Police Department, to inform him of the purchase. Detective Rodriguez, who was in a unmarked police car parked outside of Morales' apartment, then observed Morales exit his apartment and drive off in his car. Detective Rodriguez radioed for a marked patrol car to join him in effectuating the arrest.

After Morales had been pulled over, Detective Rodriguez informed him that a police officer had just purchased drugs from him. Morales denied having sold drugs to anyone. Detective Rodriguez then asked to see any money that Morales had. Morales showed him $120, which included a twenty dollar bill from the marked buy money that Detective Jannuzio had used to purchase the heroin.

Detective Rodriguez then gave Miranda warnings to Morales and asked for his consent to search his apartment. Morales signed a consent to search form. At his apartment, police found four small bags of heroin hidden inside a small hole in the wall of one room, one small bag on the floor of the same room, and another small bag on the bed in another room. Police found the second marked twenty dollar bill in the possession of Tomasa Nieves, who was inside the apartment. Police also found a Ritz Cracker box containing eleven hypodermic needles and syringes. After completing the search, Detective Rodriguez asked Morales whether he was a drug user. Morales replied that he used drugs and that he sold drugs to support his addiction.

Morales was charged with two counts of delivery of heroin, one count of possession with intent to deliver heroin, two counts of maintaining a dwelling, one count of possession of a hypodermic needle and syringe, and one count of conspiracy second degree.

At trial, Detective Rodriguez testified both as an eye witness and as a drug expert. In his capacity as an expert, Detective Rodriguez opined that the drugs that were found in Morales' apartment were consistent with the conclusion that Morales possessed the drugs with the intent to sell them. On cross-examination, Morales elicited testimony from Detective Rodriguez that the drugs found in Morales' apartment were also consistent with the conclusion that Morales, himself a heroin addict, possessed the drugs with the intent to use them.

After the State had rested, Morales moved to have the possession with intent to deliver charge reduced to simple possession, on the ground that Detective Rodriguez gave equivocal testimony that would require the jury to speculate as to Morales' intent. The Superior Court denied the motion.

Following Morales' convictions on all counts, the State filed a motion to have Morales sentenced as an habitual offender, pursuant to 11 *Del.C.* § 4214(b).[1] At the

---

1. 11 *Del.C.* § 4214(b) states:
   *Habitual criminal; life sentence.*
   (b) Any person who has been 2 times convicted of a felony or an attempt to commit a felony

hereinafter specifically named, under the laws of this State, and/or any other state, United States or any territory of the United States, and who shall thereafter be convicted of a subsequent

sentencing proceeding, the State offered in evidence certified copies of two indictments from the Commonwealth of Massachusetts. One indictment charged Morales with possession with intent to deliver a narcotic, occurring on July 11, 1977. The other charged him with trafficking 28 grams or more of cocaine, occurring on June 4, 1985. To prove the disposition of the indictments, the State offered docket entries from the Commonwealth of Massachusetts. Concerning the first charge, the docket entry for December 13, 1978, states in pertinent part, "Defendant offers to plead guilty—After hearing Court accepts defendant's offer." Concerning the second underlying offense, to which Morales had pleaded not guilty at his arraignment, the docket entry for December 27, 1985 states in pertinent part, "Plea Retracted and Plea Guilty Offered and Accepted by the Court." The State was also permitted to enter in evidence, over objection, Morales' National Crime Information Center record, which indicated that Morales had been convicted of trafficking and possession with intent to deliver in Massachusetts.

Morales argued that these records were insufficient to establish that he had pleaded guilty to the charges specified in the indictments. The Superior Court held that the State had met its burden, and sentenced Morales to a life sentence as an habitual offender under 11 *Del.C.* § 4214(b). Morales

was also sentenced to an additional fifteen years each for the remaining delivery conviction and the possession with the intent to distribute conviction.

### Sufficiency of the Evidence on the Current Delaware Charge

Morales argues that the State's evidence was insufficient as a matter of law to support his conviction of possession with intent to deliver heroin. Morales contends that the State's evidence was insufficient to establish the element of intent since Detective Rodriguez admitted on cross-examination that the drugs found in Morales' apartment could be consistent with the conclusion that Morales, himself a heroin addict, possessed the drugs with the intent to use them. In addition, the record indicates that police found hypodermic needles and syringes at Morales' apartment.

■ On appeal from the denial of a motion for judgment of acquittal, this Court makes a de novo determination " 'whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt.' " [2] This Court "is not required to ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." [3]

Under 16 *Del.C.* § 4751(a), the elements of the offense of possession of a controlled sub-

---

felony hereinafter specifically named, or an attempt to commit such specific felony, is declared to be an habitual criminal, and the court in which such third or subsequent conviction is had, in imposing sentence, shall impose a life sentence upon the person so convicted unless the subsequent felony conviction requires or allows and results in the imposition of capital punishment. Such sentence shall not be subject to the probation or parole provisions of Chapter 43 of this title.
Such felonies shall be:

  ✻  ✻  ✻  ✻  ✻  ✻

*Title 16*
Section       *Crime*

4751   Manufacture, delivery or possession with intent to manufacture or deliver a narcotic drug

4752   Manufacture, delivery or possession with intent to manufacture or deliver nonnarcotic, controlled substance

4752A   Unlawful delivery or attempt to deliver noncontrolled substance

4753A   Trafficking in marijuana, cocaine, illegal drugs or methamphetamine.

Notwithstanding any provision of this title to the contrary, any sentence imposed pursuant to this subsection shall not be subject to suspension by the court, and shall be served in its entirety at full custodial Level V institutional setting without benefit of probation, parole, earned good time or any other reduction.

**2.** *McNulty v. State*, Del.Supr., 655 A.2d 1214, 1216 n. 8 (1995), quoting *Monroe v. State*, Del. Supr., 652 A.2d 560, 563 (1995) (citations omitted).

**3.** *Skinner v. State*, Del.Supr., 575 A.2d 1108, 1121 (1990).

stance with intent to deliver are: (1) possession of a controlled substance, and (2) intent to manufacture or deliver it.[4] "Deliver" is defined as the actual, constructive, or attempted transfer of a controlled substance from one person to another, whether or not there is an agency relationship.[5] Morales claims that the State's evidence was insufficient to prove that he had the requisite intent to deliver.

The relevant question is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6] In viewing the evidence in the light most favorable to the State, this Court does not distinguish between direct and circumstantial evidence.[7] 11 *Del.C.* § 307(b) further provides:

> When the defendant's intention, recklessness, knowledge or belief is an element of an offense, it is sufficient to establish a prima facie case for the State to prove circumstances surrounding the act which the defendant is alleged to have done from which a reasonable juror might infer that the defendant's intention, recklessness, knowledge or belief was of the sort required for commission of the offense.

Viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found Morales guilty beyond a reasonable doubt of possession with the intent to deliver. At trial, the State produced evidence that Morales sold drugs within his possession to Detective Jannuzio on June 19 and July 12, 1995. The State showed that the packaging, weight, and quantity of the heroin sold to Detective Jannuzio were similar to that of the heroin found in Morales' apartment. The State also offered expert testimony that the packaging, weight, and quantity of the heroin found in Morales' apartment were consistent with an intent to deal the drugs rather than to use them personally.

The State need not produce evidence that is "consistent *solely* with the reasonable hypothesis of guilt."[8] Although the defense demonstrated that Morales was a heroin addict and elicited testimony that Morales might have possessed the small bags of heroin found inside his apartment for personal consumption, an alternative explanation of the facts that is consistent with innocence does not mandate a finding of insufficient evidence.[9] Therefore, we affirm Morales' conviction of possession with intent to distribute a narcotic.

### Habitual Offender Status

The second issue that Morales raises on review is that the State did not present sufficient evidence to establish that Morales was eligible to be sentenced as an habitual offender under 11 *Del.C.* § 4214(b).

A determination by the trial court that a defendant is an "habitual offender" must be supported by substantial evidence in the record and be free from legal error and abuse of discretion.[10] The statute requires the imposition of a life sentence, without eligibility for probation or parole, upon proof that a defendant has been three times convicted of certain enumerated offenses. In *Fletcher v. State,* this Court held that a defendant "can be sentenced under 11 *Del.C.* § 4214, using felony convictions in courts other than those of the State of Delaware, only if the State proves that the defendant was convicted of criminal acts which would support a conviction of one of the felonies enumerated in § 4214."[11]

4. *State v. Skyers,* Del.Supr., 560 A.2d 1052, 1054 (1989).

5. 16 *Del.C.* § 4701(7); *Skyers,* 560 A.2d at 1054.

6. *Skinner,* 575 A.2d at 1121.

7. *Id.*

8. *Williams v. State,* Del.Supr., 539 A.2d 164, 167 (1988), quoting *Smith v. State,* Del.Supr., 229 A.2d 21, 21 (1967) (emphasis supplied).

9. *See Williams,* 539 A.2d at 167.

10. *See Saunders v. State,* Del.Supr., 401 A.2d 629, 635 (1979).

11. *Fletcher v. State,* Del.Supr., 409 A.2d 1254, 1255 (1979).

■ At Morales' sentencing proceeding, the State offered in evidence certified copies of two indictments from the Commonwealth of Massachusetts. One indictment charged Morales with possession with intent to deliver a narcotic, occurring on July 11, 1977. The other charged him with trafficking 28 grams or more of cocaine, occurring on June 4, 1985. The State offered docket entries to show the disposition of the indictments. Concerning the first charge, the docket entry for December 13, 1978, states in pertinent part, "Defendant offers to plead guilty—After hearing Court accepts defendant's offer." Concerning the second charge, to which Morales had pleaded not guilty at his arraignment, the docket entry for December 27, 1985, states in pertinent part, "Plea Retracted and Plea Guilty Offered and Accepted by the Court." The State was also permitted to enter in evidence over objection Morales' National Crime Information Center record, which indicated that Morales had been convicted in Massachusetts of trafficking and possession with intent to deliver.

We find that these records are insufficient to establish that Morales pleaded guilty to the charges specified in the indictments. Despite the State's argument to the contrary, it is not apparent from the sparse record before this Court what offenses and statutes were the bases for Morales' prior convictions.

■ Other courts considering similar issues have reached similar conclusions. Where a guilty plea forms the basis for an underlying conviction, many courts require the prosecution to provide not only the underlying indictment or information, but also the text of the guilty plea, in order to determine whether the defendant was charged with and admitted to conduct that would establish the felony conviction.[12] We adopt this standard of proof as appropriate to be used in Delaware by the sentencing judge when considering habitual offender status involving any prior predicate felony convictions. This requirement recognizes that the crime(s) with which a defendant is charged and the crime(s) to which he or she ultimately pleads guilty in a plea bargain can be, and often are, quite different.[13] It is necessary, therefore, that the charge and the conviction of the prior predicate felony must match beyond a reasonable doubt. Or, in case of a prior plea bargain showing a conviction different from the original charge, that conviction must be shown beyond a reasonable doubt to be a specific felony for purposes of 11 *Del.C.* § 4214.

Even if the State's evidence had proven that the crimes to which Morales ultimately pleaded guilty were the same as those with which he was charged, the sentencing court still must look at Morales' conduct as it relates to the felonies enumerated in 11 *Del.C.* § 4214(b).[14] The State presented no evidence regarding Morales' conduct underlying the convictions in question.

### *Conclusion*

We conclude that the trial court abused its discretion in finding that the State met its burden to establish the underlying felony convictions necessary to determine Morales' status as an habitual offender under 11 *Del.C.* § 4214(b). Accordingly, we reverse and remand this matter to the Superior Court to vacate the sentences and to resentence the defendant in a manner consistent with this opinion.

---

**12.** *See United States v. Barney,* 10th Cir., 955 F.2d 635, 639–640 (1990) (collecting cases and holding that sentencing court may rely on charging document and text of guilty plea, but not on charging document and presentence report); *see also United States v. Spell,* 11th Cir., 44 F.3d 936, 940 (1995) (sentencing court may not rely on conduct contained in charging document without ever determining whether appellant was convicted of charged offense); *United States v. Hill,* 10th Cir., 36 F.3d 978, 981 (1994) (same).

**13.** *Hill,* 36 F.3d at 981.

**14.** *Fletcher,* 409 A.2d at 1255 ("The best and most just method of determining those deserving of such punishment is to look at the prior conduct of the defendant as it relates to the felonies in the Delaware Criminal Code, rather than to rely on technical classifications of other jurisdictions over which our legislature has no control.").