**Graylin L. HALL, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 555, 2000.**

Supreme Court of Delaware.

Submitted: Nov. 21, 2001.
Decided: Dec. 26, 2001.

---

18. *Id.* Standard 9.22(d).

19. *Id.* Standard 9.22(a).

20. *Id.* Standard 9.32(b).

21. *Id.* Standard 9.32(h).

Neil F. Dignon, of Brown, Shiels, Beauregard & Chasanov, Georgetown, Delaware, for appellant.

Timothy J. Donovan, Jr., of the Department of Justice, Wilmington, Delaware, for appellee.

BEFORE: VEASEY, Chief Justice, WALSH and BERGER, Justices.

VEASEY, Chief Justice:

This case concerns two questions. The first is whether the introduction of a prior statement of a witness who is physically present for cross-examination, but has only a limited recall of the facts contained in his prior statement, violates the Confrontation Clause of the United States Constitution. The second is whether, when the State is using a guilty plea from a Delaware court to establish a prior predicate offense nec-

essary for habitual offender status, it must produce the text of that plea.

There was no violation of the Confrontation Clause here. First, the failure of the witness' memory was not so complete and sustained as to be comparable to cases involving Confrontation Clause violations. Second, the United States Supreme Court has categorically rejected the idea that a witness' failure to remember the reasons for a past belief can constitute a violation of the Confrontation Clause.

Substantial evidence supported the Superior Court's conclusion that the State has proven beyond a reasonable doubt the requisite predicate offenses for Hall's habitual offender status. Here, the State did prove, beyond a reasonable doubt, that the guilty plea in question constituted a predicate offense even without the text of that plea. The State need not provide the text of a guilty plea whenever it offers a guilty plea to establish a predicate offense. The guilty plea occurred in a Delaware court, so there was no danger that the conduct underlying the plea did not constitute a predicate offense under Delaware law. In addition, the docket sheet was perfectly clear that the defendant had pleaded guilty to two counts of burglary in the second degree, a conviction that qualifies as one of the enumerated offenses of Delaware's habitual offender statute. Thus, unlike our decision in *Morales v. State*,[1] there was no reasonable doubt that Hall had pleaded guilty to a lesser included offense not constituting a predicate offense.

### Facts

The victim, 72–year–old Alicia McDermott, lived in a condominium in Bethany Beach. On December 29, 1999, McDer-

mott returned home from a trip to the post office at about 12:30 in the afternoon. As she did so, she noticed a maintenance truck by a pond near her property. She attended to various activities in her condominium, and then decided to go to bed. She put a space heater in her upstairs bathroom to warm it up, resting on her bed in the meantime. After enough time had passed to warm the bathroom, she entered it again and sat on the toilet to change her clothes.

A person jumped out at her from behind the shower curtain and placed a hand over her face. The hand was that of an African–American person. McDermott bit the thumb twice and the person ran down the stairs. McDermott followed the person, calling out, "Graylin." Graylin Hall, the appellant and defendant below, worked for Kelly Maintenance, a company that did maintenance work for McDermott's condominium complex. Hall was also the only African–American individual she knew to have access to her home. After McDermott shouted the name "Graylin" three times, the intruder grunted. The person then opened the door and fled. McDermott called the police. When they arrived, she discovered that $40 was missing from her wallet.

The State charged Hall with first degree robbery, second degree assault, second degree burglary, and possession of burglars' tools.[2] After his trial, a jury found Hall guilty on all of the counts except first degree robbery. The Superior Court granted the State's motion to sentence Hall as an habitual criminal based on Section 4214(b) of Delaware's habitual offender statute.[3] Accordingly, the Superior

---

1. Del.Supr., 696 A.2d 390 (1997).

2. The Superior Court granted Hall's motion to sever two other charges, possession of drug paraphernalia and possession of marijuana.

3. *See* 11 *Del.C.* § 4214(b) (requiring a judge to impose life imprisonment on "[a]ny person who has been 2 times convicted of a felony ... hereinafter specifically named ... and

Court sentenced Hall to life imprisonment at Level V for the second degree burglary charge, three years for the possession of burglars' tools, and three years for the second degree assault.

### The Confrontation Clause and the Admission of the Pre–Trial Statement of a Witness with Limited Recall

Hall's first argument is that the repeated failures of memory of William Bronson, one of the State's witnesses at trial, together with the admission of his pre-trial statement, violated Hall's rights under the Confrontation Clause of the United States Constitution.[4] The State argues that the Confrontation Clause guarantees only the opportunity to cross-examine and not the effectiveness of that cross-examination, and that Hall did indeed receive this opportunity.

William Bronson also worked for Kelly Maintenance. Hall would often pick him up from work. During their investigation of Hall, the police spoke with Bronson. Bronson made a statement to police that incriminated Hall in several ways. First, Bronson said that when Hall picked him up from work that day, his thumb had been injured. Second, Bronson's description of a jacket Hall was wearing that day matched McDermott's description of her attacker's jacket. Hall and the State both agree that Bronson is mentally challenged.[5]

The State called Bronson as a witness for two reasons: to let the jury hear his testimony and to establish his availability in order to admit his prior statement to police.[6] Bronson answered all the questions readily and to the best of his abilities. He remembered giving a statement to police and voiced his intention to "stick to" that statement. His testimony, however, was equivocal and confused. For example, in response to a question about what Hall was wearing on the day in question, Bronson said, "Well, I don't look at people's clothing," and, "[H]e wore a maroon sweatshirt a lot." Later, he asserted that Hall had been wearing "a new Christmas jacket," but then promptly agreed with the State that it was a gray and black jacket. Bronson asserted first that Hall came to pick him up in a blue pick-up truck, then said it was green, then responded to the State's question about this inconsistency by equivocating: "Yeah. I recall—it was a while back, but I think that's what happened." At one point, the State commented that Bronson was having difficulty remembering these events, and Bronson responded, "I didn't think I'd have to come to court and go over every little thing." Bronson evinced an intention to "stick to" his prior report "because it was more fresh in my mind at the time." Bronson's testimony had the same character on direct examination as it did on cross-examination.

The State then moved to introduce Bronson's prior statement to police. Hall objected that Bronson's failure of memory violated Hall's right to cross-examine Bronson under the Confrontation Clause of the United States Constitution. The Superior Court ruled that Bronson was

---

who shall thereafter be convicted of a subsequent felony hereinafter specifically named").

4. U.S. Const. amend. VI.

5. *See* Appellant's Op.Br. at 11 (referring to "Mr. Bronson's mental disabilities"); Appellee's Ans.Br. at 5 (characterizing Bronson as "[a]pparently of limited intelligence").

6. *See* 11 *Del.C.* § 3507 (permitting the introduction of a witness' voluntary, out-of-court prior statement as substantive evidence in the case so long as the witness is "present and subject to cross-examination").

available for cross-examination for the purposes of both Section 3507 and the Confrontation Clause.

■ This Court reviews de novo claims of violations of the United States or Delaware constitutions.[7] Both the Delaware and United States constitutions guarantee the basic right of cross-examination, which has aptly been characterized as the " 'greatest legal engine ever invented for the discovery of truth....' "[8] The Confrontation Clause of the Sixth Amendment to the U.S. Constitution gives a defendant the right "to be confronted with the witnesses against him."[9] The Delaware Constitution provides that "in all criminal prosecutions, the accused hath a right ... to meet the witnesses in their examinations face to face."[10] The Confrontation Clause of the U.S. Constitution represents

the floor of protection due a defendant, not the ceiling, and states are free to provide more protection.[11]

■ The U.S. Constitution's Confrontation Clause guarantees only the opportunity to cross-examine, not "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[12] It does not guarantee that a witness will "refrain from giving testimony that is marred by forgetfulness, confusion, or evasion."[13] There are some circumstances, however, in which a defendant has so little opportunity to cross-examine that the Confrontation Clause has been violated even though the witness is physically present. For example, courts have ruled that "limitations on the scope of examination by the trial court[14] or assertions of privilege by the witness[15]"[16] can be so limiting as to

---

7. *Warren v. State*, Del.Supr., 774 A.2d 246, 251 (2001) (addressing the Confrontation Clause specifically).

8. *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (quoting 5 John H. Wigmore, Evidence § 1367 (John H. Chadbourn rev. ed.1974)); *cf. Capano v. State*, Del.Supr., 781 A.2d 556, 615–16, 626–27 (2001) (discussing whether the Confrontation Clause barred testimony otherwise admissible under the state of mind and medical diagnosis exceptions to the hearsay rule). *Capano* concerned the analytically distinct issue of whether the admission of a statement that falls within an exception to the hearsay rule violates the Confrontation Clause. *Id.* at 615–16, *see United States v. Owens*, 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (rejecting an inquiry into whether testimony possesses indicia of reliability or particularized guarantees of trustworthiness when "a hearsay declarant is present at trial and subject to unrestricted cross-examination").

9. U.S. Const. amend. VI. The Sixth Amendment applies to the states by virtue of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

10. Del. Const. art. I, § 7. Hall did not make any argument based on the Delaware Constitution.

11. *McGriff v. State*, Del.Supr., 781 A.2d 534, 538–42 (2001) (holding that application of the "tender years" statute, 11 *Del.C.* § 3513, did not violate either the U.S. or Delaware constitutions). There is no need, for purposes of this case, to discuss the differing language of the U.S. and Delaware constitutions, as Hall does not invoke the Delaware constitution, only the U.S. constitution.

12. *Owens*, 484 U.S. at 559, 108 S.Ct. 838 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985))).

13. *Fensterer*, 474 U.S. at 21–22, 106 S.Ct. 292.

14. *See United States v. Vargas*, 9th Cir., 933 F.2d 701, 705 (1991) (finding a violation of the Confrontation Clause when a trial court did not allow the defendant to cross-examine the witness about a prior statement).

15. *See United States v. Torrez–Ortega*, 10th Cir., 184 F.3d 1128, 1132 (1999) (finding a violation of the Confrontation Clause based on a witness' "obstinate and repeated assertion of the privilege against self-incrimination").

16. *Owens*, 484 U.S. at 562, 108 S.Ct. 838.

constitute a violation of the Confrontation Clause.

■ Thus, determining whether a defendant has had so little opportunity to cross-examine that his or her Confrontation Clause rights have been violated is, to some extent, an exercise in line-drawing. This case, however, does not come close to that line. Cases in which courts have found a violation of the Confrontation Clause when the witness was physically present have involved witnesses who do not answer questions to an entire area of necessary inquiry.[17] By contrast, here Bronson answered readily and willingly all of Hall's questions relating to his prior statement and gave a fair amount of detail.

■ The normal remedy for testimony that is "marred by forgetfulness, confusion, or evasion" is impeachment.[18] Hall was free to highlight the fact that Bronson could not independently verify the details of his statement that had incriminated Hall. Hall was also free to highlight Bronson's mental condition. These factors would have reduced Bronson's reliability as a witness in the eyes of the jury. Furthermore, Hall could have argued at closing that Bronson seemed suggestible and eager to please, factors that could further have reduced the value of his initial state-

ment to police. Hall's proper remedy was not to exclude Bronson's prior statement but, rather, to attack its credibility. Such issues of the weight of evidence, as distinct from its admissibility, are for the jury.

In *Johnson v. State*,[19] this Court addressed the issue of a witness' "limited recall."[20] In that case, the victim, a seventy-five year old woman, was assaulted and raped.[21] The State sought to introduce various prior statements by the victim in which she gave a description of her attacker.[22] On the witness stand, however, the victim "indicate[d] that she did not recall anything during a time which included the first three [out of four of her] out-of-court statements...."[23] Furthermore, the victim was not able to describe her attacker.[24] This Court noted that the issue of whether limited recall implicated the Confrontation Clause was then unsettled in the federal courts.[25] We held, however, that the issue was a matter of weight for the jury, not a constitutional violation.[26] Unlike the victim in *Johnson*, Bronson was able to recall his prior statement to the police, and that it was accurate at the time he gave it. Moreover, unlike the victim in *Johnson*, Bronson was able independently to describe some of the facts described in his prior statement. Thus, Bronson's recall was less limited than that of the victim

---

17. *Torrez–Ortega*, 184 F.3d at 1132; *Vargas*, 933 F.2d at 705.

18. *Fensterer*, 474 U.S. at 21–22, 106 S.Ct. 292 (holding that an expert witness' inability to recall his opinion's basis "went to the weight of the evidence, not its admissibility").

19. Del.Supr., 338 A.2d 124, 127 (1975).

20. *Id.* at 127.

21. *Id.* at 125.

22. *Id.* at 126.

23. *Id.* at 127.

24. *Id.*

25. *Id.*

26. *Id.* ("The jury can make a judgment in the light of all the circumstances presented, including any claim by the witness denying the prior statement, or denying memory of the

in *Johnson*, a case in which this Court failed to find a Confrontation Clause violation.

*United States v. Owens*,[27] a United States Supreme Court case decided after *Johnson*, supports our opinion in *Johnson* and our conclusion in this case. *Owens* involved the testimony of a prison counselor who had been the victim of a brutal prison attack in which his assailant beat him in the head with a metal pipe.[28] The FBI obtained a statement from the victim in which he identified his attacker as the defendant.[29] At trial, however, the victim admitted that he could not remember whether he saw his assailant during the attack, nor whether any visitor had suggested that the defendant was his attacker.[30] Defense counsel tried unsuccessfully to refresh the victim's memory with hospital records, including one in which he identified another as his assailant.[31] *Owens* characterized an earlier case, *Delaware v. Fensterer*,[32] as addressing the Confrontation Clause implications of a witness who testified to a current belief but could not recall the basis on which he had formed that belief.[33] In contrast, *Owens* concerned the related issue of the witness who "is unable to recollect the reason for [a] past belief."[34] The United States Supreme Court held that there was no violation of the Confrontation Clause in *Owens* because "successful cross-examination is not the constitutional guarantee."[35]

■ Thus, *Owens* supports our holding in *Johnson* because the witnesses in both cases had testified to a past belief for which they were unable to recall their reasons. It also forecloses Hall's argument in this case, for two reasons. First, like the witnesses in *Johnson* and *Owens*, Bronson's failure of memory here went to the reasons for a past belief. The United States Supreme Court has held that this fact alone may not, as a matter of law, constitute a violation of the Confrontation Clause.[36] Second, Bronson's failure of memory was not as total and sustained as that of the witness in *Owens*.

### A Delaware Guilty Plea as a Predicate Offense For Habitual Offender Status

Hall argues that the Superior Court erred when it allowed the State to introduce a docket sheet, rather than the text of Hall's guilty plea, to establish a predicate offense required for habitual offender status.[37] Hall argues that *Morales v. State*[38] requires the State to produce the text of any guilty plea when the State offers a guilty plea to establish a predicate offense. The State argues that the Superior Court did not err because the docket sheet in question clearly identified the crimes to which Hall pleaded guilty.

■ Following the verdict, the State moved to sentence Hall as an habitual offender. Section 4214(b) of the habitual

---

prior statement or operating events, or changing his report of the facts.").

27. 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

28. *Id.* at 555, 108 S.Ct. 838.

29. *Id.*

30. *Id.*

31. *Id.*

32. 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

33. *Owens*, 484 U.S. at 558, 108 S.Ct. 838.

34. *Id.* at 559, 108 S.Ct. 838.

35. *Id.* at 559–60, 108 S.Ct. 838.

36. *Id.*

37. 11 *Del.C.* § 4214.

38. Del.Supr., 696 A.2d 390 (1997).

offender statute requires a court to impose a life sentence upon a defendant who "has been 2 times convicted of a felony . . . hereinafter specifically named . . . and who shall thereafter be convicted of a subsequent felony hereinafter specifically named. . . ." [39] Such a sentence is not subject to probation or parole. The "subsequent felony" the State offered was Hall's conviction for second degree burglary in this case, which is indeed one of the felonies enumerated in Section 4214(b). The two prior convictions the State offered under Section 4214(b) were also for burglary in the second degree, one from 1981 and one from 1988 and both from Delaware courts. The 1981 conviction was based upon a guilty plea. To prove the 1981 conviction the State provided the sentencing order and the docket sheet. The docket sheet lists the entry of nolle prosequi for three charges and a guilty plea for two. The docket sheet specifically records that Hall pleaded guilty to two counts of burglary in the second degree.

In *Morales v. State*,[40] the State offered Morales' guilty plea from a Massachusetts court as one of the predicate offenses for habitual offender status.[41] The State offered certified copies of two indictments, and two docket entries.[42] The two indictments were for possession with intent to deliver in 1977 and trafficking in 1985, respectively.[43] Morales had initially pleaded not guilty to the second charge.[44] The docket entry for the first charge read, "Defendant offers to plead guilty—After hearing Court accepts defendant's offer."[45]

The second docket entry read, "Plea Retracted and Plea Guilty Offered and Accepted by the Court."[46] The State also introduced into evidence a National Crime Information Center report that Morales had been convicted of both trafficking and possession with intent to deliver.[47] We concluded that "it is not apparent from the sparse record before this Court what offenses and statutes were the bases for Morales' prior convictions."[48] This Court was clearly concerned with the 1985 plea, which contained an ambiguity. One possible explanation for the language of that plea was that Morales had initially decided to plead guilty, later retracted his plea for some reason, and then offered a plea to the same offense again upon reconsideration. This interpretation would have qualified Morales for habitual offender status under Delaware law because trafficking is indeed an enumerated offense within Section 4214(b).

On the other hand, another interpretation was that Morales initially decided to plead guilty, retracted his plea, and then accepted a plea bargain to a lesser offense. This interpretation might have disqualified Morales from habitual offender status because his conviction might not have been for an enumerated offense. Furthermore, the National Crime Center report was no help because there was no evidence to suggest that it was based upon a correct interpretation of the docket entry's ambiguous language. Thus, this Court set aside Morales' sentence as an habitual offender because the State had failed to prove ha-

39. § 4214(b).

40. Del.Supr., 696 A.2d 390 (1997).

41. *Id.* at 392–93.

42. *Id.* at 393.

43. *Id.*

44. *Id.*

45. *Id.*

46. *Id.*

47. *Id.*

48. *Id.* at 395.

bitual offender status "beyond a reasonable doubt." [49]

■ Hall argues that *Morales* stands for the proposition that the State must produce the text of a guilty plea whenever the State uses a guilty plea as a basis for habitual offender status, regardless of whether the plea is from a foreign jurisdiction or from a Delaware court.[50] *Morales* stands only for the proposition that the State must show a guilty plea offered as a predicate offense for habitual offender status beyond a reasonable doubt, not that it must necessarily do so with the text of that guilty plea. Both this Court and the Superior Court have favored this narrower reading.[51] In fact, we are aware of no other jurisdiction, state or federal,[52] that categorically requires the text of a guilty plea to show habitual offender status.[53] Finally, some jurisdictions may not keep records of the text of every guilty plea offered for decades. Given that guilty pleas are a significant percentage of all convictions, such a rule might significantly reduce the utility of the habitual offender statute in a way that the Delaware General Assembly did not intend. Therefore, we decline to adopt it.

*Morales* holds that the State has the burden of proof in establishing that each predicate offense meets the requirements of Section 4214 and that the State must prove its case beyond a reasonable doubt.[54]

**49.** *Id.*

**50.** See *Morales*, 696 A.2d at 395 (observing that "many courts require the prosecution to provide not only the underlying indictment or information, but also the text of the guilty plea, in order to determine whether the defendant was charged with and admitted to conduct that would establish the felony conviction").

**51.** See *Smith v. State*, Del.Supr., 751 A.2d 878, Walsh, J. (2000) (ORDER at 9) (holding that the docket sheets at issue were sufficient "[a]bsent any evidence raising questions concerning the accuracy of the docket sheets"); *Gatewood v. State*, Del.Supr., 734 A.2d 641, Berger, J. (1999) (ORDER at 7) (holding that the docket sheet at issue was "more detailed" than the one in *Morales* and thus constituted "prima facie evidence" of the predicate conviction); *Karim v. State*, Del.Super., Cr.A. No. IN82-09-0053, Toliver, J. (Mar. 16, 2001) (Op. and Order) (holding that the docket sheet at issue did not establish reasonable doubt of the commission of a predicate offense), aff'g, Del.Supr., 784 A.2d 1081, Steele, J. (2001) (ORDER at 2) (referring to *Morales* as "factually distinguishable").

**52.** In *United States v. Hill*, 10th Cir., 36 F.3d 978 (1994), the Tenth Circuit did indeed require the government to produce the text of any guilty pleas used in establishing armed career criminal status, *id.* at 981, albeit over a vigorous dissent. *Id.* at 982 (Baldock, J., dissenting) (refusing to read prior caselaw as requiring the text of all guilty pleas). This holding lasted a scant seven months, however, because the Tenth Circuit reversed itself in an en banc hearing, with the dissenting judge in the prior opinion authoring the new one. *United States v. Hill*, 10th Cir., 53 F.3d 1151, 1152 (1995).

**53.** Indeed, a defendant may always introduce the text of a guilty plea, or indeed any other evidence, to rebut the State's prima facie evidence that the defendant has committed the requisite predicate offenses.

**54.** See *Morales*, 696 A.2d at 395 ("We adopt this standard of proof . . . that the charge and the conviction of the prior predicate felony must match beyond a reasonable doubt."). This standard of proof appears to be the majority rule among the states. See *Linam v. Griffin*, 10th Cir., 685 F.2d 369, 372 (1982) ("The majority rule appears to require that proof under the habitual offender statute be established beyond a reasonable doubt."); see also *State v. Hennings*, Wash.Supr., 100 Wash.2d 379, 670 P.2d 256, 257 (1983) (observing that, in an habitual criminal proceeding under Washington law, the "State has the burden of proving beyond a reasonable doubt several facts," including "the existence of two prior valid felony convictions along with the present conviction"); *People v. Reese*, N.Y.Ct. App., 258 N.Y. 89, 179 N.E. 305, 308 (1932) (Cardozo, J.) ("The genius of our criminal law

The extent of the holding in *Morales* was that the patent ambiguity of the record there created a reasonable doubt.

■■■■　We hold that the State need offer only unambiguous documentary evidence of a prior predicate conviction, not live witnesses,[55] and not a particular or exclusive type of documentary evidence. Once the State has offered evidence of the prior conviction that is regular on its face, the State has met its burden of establishing a prima facie case.[56]　The State need not anticipate every possible difficulty in that proof that a defendant might raise.[57]

■■　When the State offers a conviction based upon a guilty plea as a predicate offense for habitual offender status, there are at least two problems that might arise. One is whether the defendant's conduct actually constituted a predicate offense within the meaning of Section 4214(a) (requiring that the predicate offense be a "felony") or Section 4214(b) (requiring that the predicate offense be one in a list of felonies).　The other is whether the defendant pleaded guilty to all of the charged offenses, some of the charged offenses, or to a lesser included offense of one of the charges.

■■　As to the first problem, Delaware courts have said that in order to qualify as a predicate offense, the conduct leading to an out-of-state judgment must be such that it would have supported a conviction for the appropriate predicate offense in Delaware.[58]　Thus, a court must "look at the prior conduct of the defendant as it relates to the felonies in the Delaware Criminal Code, rather than to rely on technical classifications of other jurisdictions over which our legislature has no control." [59]　One of the reasons *Morales* vacated the defendant's sentence in that case was that the State had offered no evidence that the conduct underlying Morales' guilty plea constituted a predicate offense under Delaware law.[60]　Here, however, Hall's guilty pleas were all in Delaware courts, to offenses charged under Delaware law. Thus, this problem does not apply to this case.

The State must also establish beyond a reasonable doubt that the defendant actually pleaded guilty to, or was found guilty of, a predicate offense, and not merely that the defendant was charged with one.　In *Morales*, because of the patent ambiguity, it was unclear whether the defendant had been convicted of trafficking or of a lesser offense that would not constitute a predi-

---

is violated when punishment is enhanced in the face of a reasonable doubt as to the facts leading to enhancement.").

**55.** *Oney v. State*, Del.Supr., 446 A.2d 389, 395 (1982); *Saunders v. State*, Del.Supr., 401 A.2d 629, 634–35 (1979).

**56.** *See Gatewood v. State*, Del.Supr., 734 A.2d 641, Berger, J. (1999) (ORDER at 8) (ruling that a Maryland docket sheet was "prima facie evidence of Gatewood's prior conviction" and was sufficient "[a]bsent any evidence raising questions as to the accuracy of the docket sheet or the identity of the perpetrator"); *see also United States v. Paleo*, 1st Cir., 967 F.2d 7, 13 (1992) ("Unless it reveals unconstitutionality on its face, a certified copy

of a court record of conviction, or a presentence report's account of a past conviction, will normally prove the fact of a valid conviction.").

**57.** *Paleo*, 967 F.2d at 13.

**58.** *Fletcher v. State*, Del.Supr., 409 A.2d 1254, 1255 (1979).

**59.** *Id.* (holding that a defendant's prior conviction could not qualify as a predicate offense if, under Delaware law, the defendant would have been guilty of a juvenile offense and not a felony).

**60.** 696 A.2d at 395.

cate offense.[61] Thus, the State had not met its burden of proof. Here, by contrast, it is clear that Hall pleaded guilty to two of his five original charges and that the State entered a nolle prosequi as to the rest. It is also clear that Hall pleaded guilty to two specific counts of burglary in the second degree, which are indeed enumerated offenses under Section 4214(b).

■ The Superior Court's determination of habitual offender status must be supported by substantial evidence, and free from legal error and any abuse of discretion.[62] Here, there was substantial evidence to support the Superior Court's conclusion that the State had met its burden of proof in establishing beyond a reasonable doubt the predicate offenses required under Section 4214(b).

*Conclusion*

Although the testimony of witness William Bronson was sometimes confused and equivocal, admission of his out-of-court statement did not constitute a violation of the Confrontation Clause of the U.S. Constitution. There was sufficient evidence to support the Superior Court's conclusion that the State had shown, beyond a reasonable doubt, that Hall had pleaded guilty to a predicate offense under Section 4214(b). Accordingly, we affirm the judgment of the Superior Court.

■

61. *Id.*

62. *Saunders v. State,* Del.Supr., 401 A.2d 629, 635 (1979).