**Thurman C. O'NEAL and Michael F. George, Defendants Below, Appellants,**

**v.**

**The STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Oct. 3, 1968.

208

Richard Allen Paul, Asst. Public Defender, Wilmington, for Thurman C. O'Neal, defendant below, appellant.

William J. Alsentzer, Jr., Wilmington, for Michael F. George, defendant below, appellant.

Richard G. Elliott, Jr. and Robert E. Daley, Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This appeal from convictions of robbery involves the alleged perjured testimony of an accomplice.

The appellants Thurman C. O'Neal and Michael F. George were jointly indicted for the robbery of a liquor store operator, William Kempski. A separate indictment was returned against Charles L. Pruitt for the same offense. Some time before the trial, upon application of the State, the cases were consolidated for trial; but just before trial commenced, the State "elected" not to try Pruitt, and the trial proceeded as to the appellants only.

Pruitt testified as an eye witness against the appellants and they were convicted. A few days later, Pruitt entered a plea of guilty to assault and battery upon Kempski.

Subsequently, the Superior Court granted a new trial to the appellants upon the basis of newly discovered evidence, manifested by the affidavit of Richard Skillman stating that Pruitt was with him elsewhere at the time of the robbery. The State's motion for reargument was denied but, subsequently, reargument upon the motion for new trial was granted when the State produced evidence indicating that the Skillman affidavit had been obtained by the coercion of the appellants. Upon the rehearing, the Trial Court concluded that the Skillman affidavit was unworthy of belief, and that it had erred in granting the new trial upon the basis thereof. Accordingly, the Trial Judge vacated his prior order and denied new trial.[1] O'Neal and George appeal from their convictions and the denial of new trial.

The appeals are on three grounds:

## I.

It is contended that when the State "elected" not to proceed with the trial of Pruitt, a severance was granted in violation of Superior Court Criminal Rule 14, Del.C.Ann.,[2] because the State failed to show prejudice in support of its application; that, therefore, the Trial Court abused its discretion in permitting the trial to proceed against O'Neal and George only.

There is no need to enter into an extensive discussion of Rule 14 because the State's action did not amount to an application for a severance. In this connection, the prosecutor stated to the Court: "We can make a fair representation to you that we will not be trying Mr. Pruitt and for that reason there is no sense delaying the trial for the other two gentlemen who will stand trial." In our view, and apparently in the view of the Trial Judge, this amounted to an announcement by the Deputy Attorney General of intention to enter a *nolle prosequi* as to the robbery charge against Pruitt.

The Attorney General, representing the Executive branch of our State government, has the duty and responsibility to decide who shall be prosecuted and for what offense. In this State, it is within the scope of the power of the Attorney General to enter a *nolle prosequi*, before the commencement of trial, as to any pending criminal charge; and this without the necessity of stating his reasons therefor, or of obtaining the consent of the Court. See State v. Dennington, 1 Storey 322, 145 A.2d 80 (1958).

Accordingly, it appears that the prosecutor acted within the recognized power of his office in announcing to the Court, before the trial commenced, that the Attorney General chose not to proceed against Pruitt; and the Trial Judge, whose consent was not required, committed no error in permitting the trial to proceed as to the appellants only.

## II.

The appellants contend that a new trial should have been granted because Pruitt's subsequent plea of guilty to the charge of assault and battery established that he committed perjury at the trial; because such perjured testimony was uncorroborat-

---

1. Previously we remanded this case to the Superior Court for supplementation of the record as to these post-conviction proceedings. A suitable record had been made in the Superior Court but the transcript was inadvertently omitted. The record on appeal has now been completed.

2. Superior Court Criminal Rule 14 provides:

"RULE 14. RELIEF FROM PREJUDICIAL JOINDER

"If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

ed; and because in that posture, the testimony of Pruitt was clearly outweighed by the testimony of the appellants' alibi witnesses.

■ It is settled in this State that a conviction may stand upon the uncorroborated testimony of an accomplice if the jury is satisfied beyond a reasonable doubt that the testimony is true. See State v. Thomas, 6 Terry 385, 75 A.2d 218 (1950); State v. Winsett, Del., 205 A.2d 510, 521 (1964). The weight to be accorded such testimony is, of course, for the jury to decide. The only question presented in this connection, requiring further comment, arises from the assumption that Pruitt perjured himself at the trial as evidenced by his subsequent plea.

Pruitt's subsequent plea affected only his credibility and his own complicity. At the trial, Pruitt identified the appellants as the robbers and, asserting that he was trying to help the victim, he denied complicity. The subsequent plea of guilty of assault and battery did not contradict Pruitt's testimony as to the central issue of the trial: the identification of the appellants as two robbers. Thus, any perjury of Pruitt related only to his own involvement and his credibility. Insofar as the trial of the issue of the appellants' guilt is concerned, this comes down to Pruitt's credibility.

■ It is settled that newly discovered evidence which, as to the issues tried, would serve only to impeach the credibility of a witness is not sufficient ground for new trial. See State v. Lynch, 2 W.W. Harr. 600, 128 A. 565 (1925); State v. Nelson, 105 N.H. 184, 196 A.2d 52 (1963); State v. Jackson, 126 Vt. 250, 227 A.2d 280 (1967); Com. v. Green, 358 Pa. 192, 56 A. 2d 95 (1948). Accordingly, we cannot say that the Trial Court abused its discretion in denying a new trial.

### III.

■ Finally, it is urged that the appellants were denied due process, and new trial must be granted, because the prosecutor, knowing that Pruitt was falsely testifying in denying his own complicity, sought and obtained the conviction of the appellants by the use of his testimony.

Reliance is placed upon Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, (1959). The United States Supreme Court there stated that "a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." There, the witness had been promised assistance by the prosecutor as to his own criminal status; but at the trial of another, being handled by the same prosecutor, the witness denied having been promised anything in return for his testimony. The Court set aside the conviction, holding that the prosecutor had the duty then and there to correct that which he knew to be false.

We endorse the rule of the *Napue* case. Indeed, we would go further: if the prosecutor actually knew that the testimony he adduced from Pruitt was false and perjury, and made no effort to correct it, he would be, in our view, guilty of conduct unprofessional and censorable. But there is no showing in the case before us that the prosecutor knew that Pruitt was lying about his non-complicity. The prosecutor may have suspected it; indeed, in his opening statement and summation to the jury, the prosecutor expressed doubts as to the validity of Pruitt's exculpatory testimony. But there is a significant difference in this area between opinion and knowledge. The prosecutor was entitled to use Pruitt's testimony as previously told to the police, his personal beliefs as to Pruitt's complicity notwithstanding, so long as he did not have actual knowledge to the contrary. In the absence of a showing of such knowledge, the convictions are not vulnerable upon this ground.

Accordingly, we find no error in the judgments below. They are affirmed.