**Michael R. SMITH, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 143, 2009.**

Supreme Court of Delaware.

Submitted: March 10, 2010.

Decided: March 30, 2010.

Joseph M. Bernstein, Esquire, Wilmington, DE, for appellant.

Abby Adams, Esquire, Department of Justice, Georgetown, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice:

The defendant-appellant, Michael R. Smith ("Smith"), was convicted following a jury trial in the Superior Court, of Felony Murder, Murder in the Second Degree, Robbery in the First Degree (two counts), Possession of a Firearm During Commission of a Felony ("PFDCF") (four counts) and Conspiracy in the Second Degree.[1] Smith was sentenced to life imprisonment plus an additional 142 years of incarceration. Smith's convictions and sentences were affirmed by this Court on direct appeal.[2]

Smith filed a timely Motion for Post-Conviction Relief ("Rule 61 Motion"), which asserted several claims based on alleged ineffectiveness of counsel both at trial and on direct appeal. Smith's former attorneys filed a response to the allegations in the Rule 61 Motion. No evidentiary hearing was held, and the Superior Court denied Smith's Rule 61 Motion.

Smith has raised only three issues on this appeal. First, he argues that his former trial attorneys were ineffective under *Strickland v. Washington*[3] ("*Strickland*") when they failed to request a jury instruction concerning the credibility of accomplice testimony in accordance with this Court's holding in *Bland v. State*.[4] Second, Smith contends that his former trial attorneys were ineffective under *Strickland* in failing to argue that the refusal to instruct the jury on self-defense, coupled with the "negative self-defense" instruction, deprived Smith of his federal Constitutional right to a fair trial. Third, Smith

---

1. A co-defendant, Shane DeShields ("DeShields"), was convicted of the same charges in a separate trial and his convictions were also affirmed on direct appeal. *See DeShields v. State*, 879 A.2d 591 (Del.2005).

2. *See Smith v. State*, 913 A.2d 1197 (Del. 2006).

3. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

4. *Bland v. State*, 263 A.2d 286 (Del.1970).

submits that his former trial attorneys were ineffective under *Strickland* when they failed to pursue issues raised by the fact that some of the potential jurors saw Smith and other witnesses in handcuffs or shackles.

We have concluded that Smith was prejudiced by his trial attorneys' ineffectiveness under the *Strickland* interpretation of the Sixth Amendment, because counsel failed to request a specific jury instruction concerning the credibility of accomplice testimony. It is, therefore, unnecessary to address Smith's other two claims. Smith's judgments of conviction must be reversed.[5]

### Facts

The historical facts that led to Smith's conviction are summarized in this Court's decision in Smith's direct appeal, viewing the evidence most favorably to the State. In the Indictment, it was alleged that on April 17, 2003, Smith participated in a robbery with Shane DeShields ("DeShields") that resulted in the death of George Coverdale ("Coverdale").

The State stipulated at trial that DeShields fired the bullet that hit and killed Coverdale. In this appeal, the State acknowledges that it "proceeded against Smith at trial as DeShields' accomplice." At Smith's trial, the State's case rested almost entirely on the testimony of two alleged eyewitnesses to Coverdale's murder—DeShields, who was Smith's alleged accomplice, and Shawn Blackwell ("Blackwell"). DeShields and Blackwell gave different versions of the events leading to

Coverdale's death, that in many respects were conflicting and internally inconsistent. Both versions, however, implicated Smith in the events that resulted in Coverdale's death.

Smith testified in his own defense and recounted a third version of the events that led to Coverdale's death.[6] In Smith's direct appeal, this Court noted that the outcome of Smith's trial turned on the credibility of Smith versus the credibility of DeShields and Blackwell:

> We recognize that DeShields['] and Blackwell's direct and cross-examination testimony were sometimes not only internally inconsistent and contradictory, but also arguably inconsistent with earlier statements. For purposes of this opinion, we draw the facts largely, though not exclusively, from the direct testimony of each witness. By convicting Smith, the jury ultimately chose to believe DeShields['] and Blackwell's testimony over Smith's, notwithstanding the inconsistencies, contradictions, and untrue statements that defense counsel effectively and carefully brought out on cross-examination.[7]

We concluded that "once the jury made its credibility determination and chose to believe DeShields'[ ] and Blackwell's testimony over that of Smith, it was certainly no longer a close case."[8]

Smith's Rule 61 Motion alleged that his trial attorneys were ineffective in failing to request a jury instruction based on *Bland*

---

**5.** The order in this matter, dated December 3, 2009, did not become final because Smith's motion for reargument was granted. That order is superseded and replaced by this opinion.

**6.** *Smith v. State,* 913 A.2d 1197, 1208–10 (Del. 2006).

**7.** *Id.* at 1203 n. 1.

**8.** *Id.* at 1218 n. 27 (citation omitted); *see id.* at 1218 ("Smith's credibility was the lynchpin for resolving the central issue in the case: whether Smith was a participant in the robbery or whether he was an innocent bystander.").

*v. State*[9] and *Cabrera v. State*[10] concerning the credibility of accomplice testimony. In this appeal, Smith claims that the following facts, as stated by him, reflect why uncorroborated statements in the testimony of his alleged accomplice, DeShields, were central to the State's case:

- All of the evidence concerning a plan to steal drugs from Coverdale and all of the evidence that drugs were in fact taken from Coverdale came from the uncorroborated testimony of DeShields. At trial, DeShields readily admitted that he took drugs from Coverdale before any shots were fired.[11] DeShields also testified that Smith was a participant in the plan to take Coverdale's drugs. DeShields' testimony concerning the alleged "drug robbery" was entirely uncorroborated. Blackwell testified that he did not see DeShields ask Coverdale for drugs or take any drugs from Coverdale.[12] Likewise, Smith testified that there was not even any discussion about drugs, let alone a theft of drugs, before the shooting started. DeShields' uncorroborated testimony concerning the "drug robbery" served as the basis for the Felony Murder charge, one count of Robbery in the First Degree, two counts of PFDCF and one county of Conspiracy in the Second Degree.

- Whether Smith and DeShields were accomplices, making Smith criminally responsible for all of the acts allegedly committed by DeShields, including the murder of Coverdale and the robbery of Blackwell by DeShields, rested almost entirely on the credibility of DeShields versus the credibility of Smith.

- In Smith's trial, the jury was presented with conflicting versions of Smith's role in the exchange of gunfire that led to Coverdale's death.[13] DeShields and Blackwell both testified that Smith fired the .32 automatic at Coverdale, who was by then running from the van. According to DeShields, the bullet fired by Smith hit the inside driver's side door of the van. According to Blackwell, Smith shot at Coverdale through the side window of the van and shattered the window.[14] Smith's trial testimony concerning the possession and firing of weapons contradicted the testimony of both DeShields and Blackwell. According to Smith, he was not asked to bring any weapons to the encounter and did not do so. Smith also specifically denied possessing or shooting a .32 caliber handgun. According to Smith, after DeShields produced a weapon and was berating Blackwell for being a "snitch," Coverdale produced a weapon and aimed it in Smith's direction. Smith then hit Coverdale's arm and tried to knock the weapon out of his hand. In doing so, Coverdale dropped the weapon, which discharged into the driver's side door.[15]

- The evidence was also conflicting concerning Smith's role or involvement in

9. *Bland v. State*, 263 A.2d 286, 289–90 (Del. 1970).

10. *Cabrera v. State*, 747 A.2d 543, 544–45 (Del.2000).

11. *Smith v. State*, 913 A.2d at 1204.

12. *Id.* at 1207.

13. *Smith v. State*, 913 A.2d at 1204–06. In Smith's trial, the parties stipulated that DeSh-ields fired the shot that killed Coverdale. *Id.* at 1204.

14. *Id.* at 1206.

15. *Id.* at 1209. Other than the conflicting testimony of DeShields, Blackwell and Smith, the only other evidence concerning the possession and firing of weapons came from a forensic expert and evidence collection witnesses who testified on behalf of the State. *See id.* at 1207–08.

the theft of personal property from Coverdale and Blackwell. According to DeShields, after the shooting had stopped, and while Coverdale lay fatally wounded near the van, he saw Smith pistol whipping Coverdale in the face with the .32 handgun. DeShields, however, did not see and did not know if Smith took any jewelry or property from Coverdale.[16] Blackwell testified that after the shooting and after DeShields had ordered him back inside the van, DeShields pointed a gun at Blackwell's head, went through his pockets and robbed him of "everything."[17] Smith, on the other hand, denied taking anything from Coverdale and testified he saw DeShields going through Coverdale's pockets and take money from Coverdale while Coverdale was lying on the ground.[18]

### Strickland Standard

■ Ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established by the United States Supreme Court in *Strickland v. Washington.*[19] Under the first prong of *Strickland,* the defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.[20] Under the second prong of *Strickland,* the defen-

dant must demonstrate a reasonable probability that the deficiencies in counsel's representation caused the defendant actual prejudice.[21] A reasonable probability is a "probability sufficient to undermine confidence in the outcome."[22]

■ In assessing the reasonableness of counsel's conduct, courts must "eliminate the distorting effects of hindsight, . . . reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time."[23] Moreover, counsel's conduct is afforded a strong presumption of reasonableness.[24] Thus, the defendant must overcome the strong presumption that the challenged action "might be considered sound trial strategy."[25]

### Reasonableness of Representation

■■ In Smith's case, defense counsel did not request a specific instruction on the credibility of accomplice testimony and none was given. In order to determine whether this claimed error was objectively reasonable representation under *Strickland,* we must first examine the merits of the claimed error. "[T]he state of the law is central to an evaluation of counsel's performance.... A reasonably competent attorney patently is required to know the state of the applicable law."[26]

---

16. *Id.* at 1205.

17. *Id.* at 1206.

18. *Id.* at 1209.

19. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

20. *Id.* at 688, 104 S.Ct. 2052.

21. *Dawson v. State,* 673 A.2d 1186, 1196 (Del. 1996) (citing *Strickland v. Washington,* 466 U.S. at 689, 694, 104 S.Ct. 2052).

22. *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052.

23. *Id.* at 689, 104 S.Ct. 2052.

24. *Id.; Dawson v. State,* 673 A.2d at 1196.

25. *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052 (citation omitted).

26. *Everett v. Beard,* 290 F.3d 500, 509 (3d Cir.2002).

At the time of Smith's trial, it was well established that, in Delaware, a defendant is entitled, upon request, to a specific jury instruction concerning the credibility of accomplice testimony in cases where the State's evidence includes the testimony of an accomplice. In *Bland,* this Court approved the use of the following jury instruction in such cases:

A portion of the evidence presented by the State is the testimony of admitted participants in the crime with which these defendants are charged. For obvious reasons, the testimony of an alleged accomplice should be examined by you with suspicion and great caution. This rule becomes particularly important when there is nothing in the evidence, direct or circumstantial, to corroborate the alleged accomplices' accusation that these defendants participated in the crime. Without such corroboration, you should not find the defendants guilty unless, after careful examination of the alleged accomplices' testimony, you are satisfied beyond a reasonable doubt that it is true and that you may safely rely upon it. Of course, if you are so satisfied, you would be justified in relying upon it, despite the lack of corroboration, and in finding the defendants guilty.[27]

In *Cabrera,* we approved the use of a variation on the above-quoted *Bland* instruction:

Cabrera's sole argument on appeal is that the trial court erred by giving a jury instruction on accomplice testimony that did not match the language approved by this Court in *Bland v. State* and incorporated in the pattern jury in-

structions. Instead of instructing the jury that the testimony of an accomplice should be examined "with suspicion and great caution," the trial court advised the jury that the testimony should be examined "with caution." Cabrera does not contend that this choice of wording was confusing or that it misstated the law. Accordingly, under well settled standards governing jury instructions, Cabrera's appeal fails.[28]

After *Cabrera,* in *Bordley v. State,*[29] this Court rejected a claim that the trial judge committed error in failing to "instruct the jury to examine [the accomplice's] testimony 'with caution.' "[30] In *Bordley,* the trial judge declined to give the instruction from either *Bland* or *Cabrera* and, instead, gave the "revised pattern jury instruction" on the credibility of accomplice testimony, as follows:

The testimony of the alleged accomplice, someone who said that [he/she] participated with another person in the commission of a crime, has been presented in this case. [John Doe] may be considered an alleged accomplice in this case. The fact that an alleged accomplice has entered a plea of guilty to the offense charged does not mean that any other person is guilty of the offense charged. As stated elsewhere in these instructions, you are the sole judges of the credibility of each witness and of the weight to be given to the testimony of each. You may consider all the factors which might affect [a] witness' credibility, including whether the testimony of the accomplice has been affected by self-interest, by an agreement [he/she] may have with the State, by [his/her] own

**27.** *Bland v. State,* 263 A.2d 286, 289 (Del. 1970).

**28.** *Cabrera v. State,* 747 A.2d 543, 544 (Del. 2000).

**29.** *Bordley v. State,* 2003 WL 22227558 (Del. Sept. 24, 2003).

**30.** *Id.* at *2.

interest in the outcome of the case, by prejudice against the Defendant, and whether or not the testimony is corroborated by any other evidence in the case.[31]

In *Bordley,* we stated:

> Although the trial judge in the present case did not instruct the jury to examine Cry's testimony "with caution," the trial judge should be granted wide latitude in framing his jury instruction. Moreover, "a trial court's instructions will not be the basis for reversible error if they [correctly state the law and] 'are reasonably informative and not misleading, judged by common practices and standards of verbal communication.' "[32]

Although in *Bordley* we approved an instruction on the credibility of accomplice testimony that did not include the "with caution" language employed in *Bland* and *Cabrera,* we did not overrule either *Bland* or *Cabrera.* Our explanation for approving the different language used in *Bland, Cabrera* and *Bordley* cases was that "the trial judge should be granted wide latitude in framing his [or her] jury instruction."[33]

Smith's case is different from *Bland, Cabrera* and *Bordley.* Unlike what occurred in those proceedings, in Smith's case defense counsel did not request a specific instruction on the credibility of accomplice testimony. Smith argues that "by virtually any definition of objectively reasonable performance under *Strickland,* Smith's trial attorneys must be charged with the knowledge that the trial court would have been required to give a specific instruction on the credibility of DeShields' testimony if such an instruction had been requested."

▉ According to Smith, "it should have been apparent to [his] trial counsel that DeShields' credibility was not only central to the State's case again Smith, but also that the irreconcilable conflicts in the testimony and the lack of corroborating evidence made this case a paradigmatic *Bland/Cabrera* situation." Indeed, Smith's former trial attorneys filed an affidavit with the Superior Court in response to Smith's Rule 61 Motion. In that affidavit, they offered no tactical or strategic reason for such an omission, and conceded error in failing to request such an instruction. Despite that concession, this Court must make an independent assessment of the record for error.[34]

This Court has not addressed the failure to request a specific jury instruction on the credibility of accomplice testimony in the context of a *Strickland* claim. Other courts that have considered the question, however, have held that such failure amounted to a deficient performance of trial counsel under *Strickland:*

> There is no reasonable trial strategy for failing to request the cautionary accomplice testimony instruction and corroboration instruction. . . . We cannot envision an advantage which could have been gained by withholding a request for th[ese] instruction[s].[35]

---

31. *Id.* at *2 n. 7.

32. *Bordley v. State,* 2003 WL 22227558, at *2 (internal citations omitted). *See also Soliman v. State,* 2007 WL 63359, at *3 (Del. Jan. 10, 2007) (approving use of "pattern instruction" that did not include the "with caution" language employed in *Bland* and *Cabrera*).

33. *Bordley v. State,* 2003 WL 22227558 at *2.

34. *Weddington v. State,* 545 A.2d 607, 612 (Del.1988).

35. *Freeman v. Class,* 95 F.3d 639, 642 (8th Cir.1996) (internal citations omitted). *See also Lankford v. Arave,* 468 F.3d 578, 583–84 (9th Cir.2006); *see also* Sheldon R. Shapiro, Annotation, *Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to accomplice's testimony against defendant in*

We agree. Smith was entitled to a *Bland*-type of instruction on accomplice credibility, if requested, as a matter of law. Smith's trial attorneys did not request such an instruction. The record reflects that a specific *Bland*-type of instruction would have focused and guided the jury's assessment of the credibility of DeShields, whose uncorroborated testimony was central to the State's case against Smith as DeShields' accomplice. Accordingly, we hold that the failure of Smith's trial counsel to request a specific instruction on the credibility of accomplice testimony amounted to "deficient attorney performance" under the first part of our *Strickland* analysis.

### Deficient Representation Caused Prejudice

■ To establish prejudice under the second prong of *Strickland,* a defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the case would have been different.[36] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[37] "It is [therefore] not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[38] Rather, "[t]he prejudice prong of the *Strickland* standard requires 'attention to

whether the result of the proceeding was fundamentally unfair or unreliable.' "[39]

■ In its Rule 61 decision, the Superior Court did not decide whether the performance of Smith's attorneys was deficient. Instead, the Superior Court only addressed the second prong of *Strickland,* and concluded that Smith was not prejudiced by the failure of his trial attorneys to request a specific jury instruction on the credibility of accomplice testimony.[40] The Superior Court noted that Smith's jury was given the pattern instruction on the credibility of witnesses in general and, therefore, concluded that Smith was not prejudiced by any failure to give a separate instruction as to the credibility of accomplice testimony:

> [the] instruction given adequately guided the jury as trier of fact and determiner of credibility. The instruction correctly stated the law and enabled the jury to perform its duty. [Smith] did not suffer any prejudice. This claim fails.

The Superior Court's conclusion that Smith was not "prejudiced" by any failure to give a specific instruction on the credibility of accomplice testimony is a legal conclusion that we review *de novo.*[41]

---

federal criminal trial, 17 A.L.R. Fed. 249 (2010).

**36.** *Strickland v. Washington,* 466 U.S. 668, 691–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**37.** *Id.* at 694, 104 S.Ct. 2052.

**38.** *Id.* at 693, 104 S.Ct. 2052.

**39.** *Outten v. State,* 720 A.2d 547, 552 (Del. 1998) (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

**40.** In *Strickland,* the court expressed a strong preference that lower courts should, if possible, decide claims of ineffective assistance of counsel by first deciding if there was any "prejudice" which resulted from the alleged deficient performance. *Strickland v. Washington,* 466 U.S. at 697, 104 S.Ct. 2052. However, if a court elects to focus initially on *Strickland's* "prejudice" prong, then the court is required to assume that the challenged conduct was "unreasonable." *Id.*

**41.** *See, e.g., Thomas v. Varner,* 428 F.3d 491, 502 (3d Cir.2005) (determination of prejudice is a legal conclusion).

The State points out that in addressing Smith's Confrontation Clause claim on Smith's direct appeal, this Court stated:

We are satisfied that the jury was exposed to facts sufficient for it to draw inferences about DeShields' [ ] reliability and credibility and that defense counsel had an adequate record from which to argue why the witness might have been biased. Thus, the jury had in its possession sufficient information to evaluate DeShields' [ ] biases and motivations.[42]

Although Smith's attorney had an adequate record to make arguments about DeShields' credibility, those jury arguments were not an acceptable substitute for a specific instruction on the law from the trial judge regarding accomplice credibility. In considering the arguments of counsel, Smith's jury was instructed on their limited purpose:

An attorney may argue in closing that a witness lied while testifying. Ladies and gentlemen, the role of an attorney is to zealously and effectively advance the claims of the party he or she represents within the bounds of the law. Further, what an attorney states in his or her opening or closing arguments is not evidence. Evidence consists of testimony from witnesses testifying from the witness stand and exhibits introduced through their testimony. It is this evidence only which you may consider in reaching your verdicts.

Similarly, while the Smith jury may have had sufficient information to evaluate DeShields' testimony, it was not instructed by the trial judge, as a matter of law, on how to use that information in assessing DeShields' credibility *as an accomplice*.

Four decades ago in *Bland*, this Court recognized that convictions that rest primarily on accomplice testimony are sufficiently problematical to merit a special jury instruction concerning the credibility of accomplice testimony, separate and apart from the general credibility of other nonaccomplice witnesses.[43] Although in decisions after *Bland*[44] this Court has allowed trial judges considerable latitude in formulating the language of an accomplice testimony instruction, we have not overruled *Bland* or held that a specific instruction is not required. In other words, even though we held that a *Bland* accomplice liability instruction need not be given verbatim, it does not follow that a general credibility instruction will "cure" a failure to give a specific instruction on the credibility of accomplice testimony.

■ In *Bland*, the *sine qua non* of our holding involved two primary principles: first, the credibility of *accomplice* testimony merits the jury's special consideration, separate and apart from its credibility assessment of other witnesses; and, second, although Delaware law does not require the testimony of an accomplice to be corroborated, the absence of corroboration also merits special consideration by the jury.[45] In *Bland*, when reviewing a conviction based solely on the conflicting and uncorroborated testimony of accomplices, this Court declined to overturn the *O'Neal*

**42.** *Smith v. State,* 913 A.2d 1197, 1233 (Del. 2006).

**43.** *Bland v. State,* 263 A.2d 286, 288 (Del. 1970).

**44.** *See Cabrera v. State,* 747 A.2d 543, 544–45 (Del.2000); *Bordley v. State,* 2003 WL 22227558, at *2 (Del. Sept. 24, 2003).

**45.** Unlike many states, Delaware law does not require that accomplice testimony be corroborated. *See Bland v. State,* 263 A.2d at 288 (citing *O'Neal v. State,* 247 A.2d 207, 210 (Del.1968)).

*v. State*[46] rule that corroboration is not an absolute necessity, noting that it was "deeply embedded" in the law of our State.[47] We recognized, nevertheless, that because of the inherent weakness in accomplice testimony, Delaware courts have always "cautioned juries that, although they have the power to convict solely upon such testimony if firmly convinced of its truth, great care should be exercised in doing so."[48] Accordingly, the instruction that we approved in *Bland* stated:

> Without such corroboration, you should not find the defendants guilty unless, after careful examination of the alleged accomplices' testimony, you are satisfied beyond a reasonable doubt that it is true and that you may safely rely upon it. Of course, if you are so satisfied, you would be justified in relying upon it, despite the lack of corroboration, and in finding the defendants guilty.[49]

■ In *Bordley,* this Court approved the use of the pattern jury instruction because it was faithful to the two primary principles articulated in *Bland.* First, it singled out the credibility of the accomplice for special consideration by the jury, vis-à-vis the credibility of witnesses who were not accomplices. Second, in evaluating the credibility of accomplice testimony, the pattern instruction directed the jury to consider "whether or not the testimony is corroborated by any other evidence in the case." Accordingly, although in *Bordley* we held that the pattern jury instruction on accomplice credibility was a correct statement of the law, we now hold that the best practice is to give the *Bland* instruction on accomplice liability rather than the pattern jury instruction given in *Bordley.*

■ In Smith's case, we ratify and reaffirm our holding in *Bland.* In particular, we determine that a general credibility instruction is not an acceptable substitute for a specific accomplice credibility instruction.[50] Therefore, the general credibility instruction given to Smith's jury was an inadequate guide to how the jury should properly conduct its deliberations in reviewing the credibility of uncorroborated testimony from an accomplice—here, DeShields.

In this case, the Superior Court did not give a special instruction on accomplice credibility because Smith's attorneys did not ask it to. As a result, the Smith jury was never advised, in accordance with *Bland,* that: accomplice credibility should be given special consideration and that the uncorroborated testimony of an accomplice should be subjected to enhanced scrutiny. Both points could have been communicated in a *Bland* type of instruction to the jury on accomplice credibility without disclosing the outcome of DeShields' case.[51]

It is undisputed that Smith did not kill Coverdale. The State stipulated that DeShields fired the gun that killed Coverdale. The theory of the State's case was that Smith was liable, as an accomplice to DeShields, for all of the criminal acts committed by DeShields, including the murder of Coverdale. Smith's jury was instructed

---

46. *O'Neal v. State,* 247 A.2d 207 (Del.1968).

47. *Bland v. State,* 263 A.2d at 288.

48. *Id.*

49. *Id.* at 289–90.

50. *See U.S. v. Gardner,* 244 F.3d 784, 790 (10th Cir.2001).

51. In denying Smith's Rule 61 Motion, the Superior Court noted that "the parties agreed they did not want the jury to know the outcome of DeShields' trial for Coverdale's murder and everyone took great pains to insure that information did not come out during DeShields' testimony."

to decide whether the death of Coverdale was "within the foreseeable range of consequences following from the commission of Robbery in the First Degree."[52]

Whether Smith and DeShields were accomplices rested entirely on whether the jury believed Smith or DeShields, in particular, about the original purpose of their encounter with Coverdale. Smith testified that there was never any plan for a robbery or a murder.[53] DeShields testified that he and Smith agreed in advance to rob Coverdale at gun point. DeShields' testimony was uncorroborated.

 When a defendant is tied to a crime through the testimony of an accomplice-witness, specific accomplice credibility instructions are required.[54] However, trial counsel's failure to request such an instruction will not always be prejudicial *per se.* The prejudicial effect depends upon the facts and circumstances of each particular case. The absence of a *Bland* instruction in Smith's case establishes prejudice under the second prong of a *Strickland* analysis. The record reflects this error casts doubt on the reliability of Smith's convictions. Accordingly, we hold that, under *Strickland,* Smith has established that he was prejudiced by the ineffective assistance of his trial counsel.

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for a new trial in accordance with this opinion.

---

**52.** *Smith v. State,* 913 A.2d at 1250.

**53.** *Id.* at 1212.

**54.** *U.S. v. Whaler,* 219 Fed.Appx. 821, 824 (10th Cir.2007) (quoting *U.S. v. Serrata,* 425 F.3d 886, 900 (10th Cir.2005)).