# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | : | ID. No. 1207014755 |
| | : | In and for Kent County |
| | : | |
| v. | : | RK12-11-0101 Assault 2nd (F) |
| | : | RK12-11-0100 PFDCF (F) |
| **LUIS M. CLARK,** | : | RK12-11-0099 PFBPP PABPP (F) |
| | : | RK12-11-0103 RECK END 1ST (F) |
| Defendant. | : | |
| | : | |

## ORDER

Submitted: January 17, 2018
Decided: March 26, 2018

Before the Court is an Amended First Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 (hereinafter the "Amended Motion") filed by Defendant Luis M. Clark (hereinafter "Mr. Clark") through his appointed counsel; the Commissioner's Report and Recommendation (hereinafter the "Recommendation"); and Mr. Clark's appeal from the Recommendation (hereinafter the "Appeal").

## I.    FACTS AND PROCEDURAL HISTORY

At the trial which led to Mr. Clark's conviction and incarceration, the State and Defense gave different accounts of the events that took place on July 17, 2012. According to the State, the victim, Oscar Ventura (hereinafter "Mr. Ventura"), and Mr. Clark engaged in a verbal dispute concerning Mr. Ventura's decision to park his car in a handicapped parking spot. Shortly thereafter, Mr. Ventura was sitting in the driver's seat of his car when he saw Mr. Clark approach the driver's side door in a menacing fashion with a silver gun in his hand. To defend himself, Mr. Ventura

retrieved a taser from the center console, opened his door, and engaged Mr. Clark in a physical fight. During the altercation, Mr. Clark struck Mr. Ventura in the face with the gun. As they fought, the gun discharged and struck the driver's side door of the vehicle. After the gun discharged, Mr. Clark walked away.[1]

The Defense agrees that the encounter began with a verbal dispute over Mr. Ventura's decision to park in a handicapped spot. However, they argue that Mr. Ventura was the aggressor, exiting his vehicle and attacking Mr. Clark with a taser. At some point during the fight, Mr. Ventura produced the silver gun. Mr. Clark, acting in self-defense, attempted to wrest the gun away from Mr. Ventura, and in the process, the gun discharged. Mr. Clark eventually won control of the gun and struck Mr. Ventura with it to incapacitate him and end the fight.

Mr. Clark was arrested several months later. Among other crimes, Mr. Clark was charged with Possession of a Firearm by a Person Prohibited; Possession of a Firearm during the Commission of a Felony; Assault in the Second Degree; and Reckless Endangering in the First Degree.

To defend against these charges, Adam Windett (hereinafter "Mr. Windett") was appointed as Mr. Clark's attorney. Prior to trial, the State and Defense agreed to a stipulation that Mr. Clark was a person prohibited from owning or possessing a firearm. At trial, both sides presented their version of events through the testimony of witnesses. The State's chief eyewitnesses were Mr. Ventura and an apparently disinterested bystander, who observed the fight from across the street. The defense's chief eyewitnesses were Mr. Clark and Mr. Jerome Lands (hereinafter "Mr. Lands"), a friend of Mr. Clark's mother.

At a prayer conference held February 18, 2014, Mr. Windett requested justification of self-defense instructions for all charges. This Court granted these

---

[1] *Clark v. State*, 103 A.3d 514 (Del. 2014).

2

requests with regard to all charges except the Possession of Firearm by a Person Prohibited charge. Mr. Windett did not request a choice of evils instruction regarding that charge.

Upon conclusion of the trial, Mr. Clark was found guilty of Possession of a Firearm by a Person Prohibited; Possession of a Firearm during the Commission of a Felony; Assault in the Second Degree; and Reckless Endangering in the First Degree. He was sentenced to a total of forty-six years of Level V incarceration followed by one year of probation. Mr. Clark unsuccessfully appealed the convictions to the Supreme Court before filing the instant Rule 61 motion for postconviction relief.

Mr. Clark filed an initial *pro se* first motion for postconviction relief, and upon receiving the services of his appointed counsel, filed an amended motion on March 28, 2016. Mr. Clark raises two claims for relief, each asserting that he received ineffective assistance of counsel: (1) trial counsel failed to request a jury instruction regarding a "choice of evils" defense; and (2) trial counsel stipulated that Mr. Clark was a person prohibited at the time that the offense occurred, resulting in prejudice.

The State responded to the motion and argued that Claim 1 failed to show ineffective assistance because Mr. Windett had determined that a self-defense instruction was sufficient, and the jury rejected the self-defense instruction and convicted Mr. Clark. As to Claim 2, the State argued that Mr. Windett's strategy of stipulating and sanitizing has been commonly used by defense counsel. Mr. Clark replied to the State's response, and this was also considered by the Court.

Pursuant to Criminal Rule 62, Mr. Windett, who served as trial counsel for Mr. Clark, filed an affidavit with regard to this matter to explain the reasoning behind his actions at trial. In the affidavit, Mr. Windett asserts that, with regard to Claim 1:

> A self-defense justification instruction was requested with regard
> to all counts of the indictment, including the count of Possession of a

Firearm by a Person Prohibited (PFBPP). The Court responded that the defense argument for inclusion of the PFBPP charge in the self-defense instruction was a "stretch" and that the Court was inclined to leave the PFBPP charge out of the self-defense instruction and "favorably entertain a motion for judgment of acquittal" on the PFBPP charge if the jury accepted the self-defense claim and the defendant was found not guilty on the remaining charges.

With regard to Claim 2, Mr. Windett asserted that the stipulation was a strategic decision to avoid presentation of the defendant's criminal record to the jury, and that the indictment was sanitized to remove any reference to the prior convictions leading to Mr. Clark's prohibited status.

The matter was referred to the Commissioner for findings of fact and recommendation pursuant to Superior Court Criminal Rule 62. The Commissioner filed the Recommendation that the Court deny Mr. Clark's motion for postconviction relief, stating that Mr. Windett's actions did not constitute ineffective assistance.

After the issuance of the Recommendation, Mr. Clark, through counsel, filed an appeal, claiming that the Commissioner had misstated the law and misapprehended important elements of Mr. Clark's claims.

## II. STANDARD

The Sixth Amendment guarantees defendants the right to the "effective assistance of counsel" throughout each critical stage in the criminal process, including pretrial preparation.[2] A Rule 61 movant must satisfy the two-prong test of *Strickland v. Washington*[3] to determine whether his counsel rendered assistance that

---

[2] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004)).
[3] 466 U.S. 668 (1984).

was "so defective as to require reversal of a conviction."[4] "First, the defendant must show that counsel's performance was deficient."[5] Such deficient performance must "fall[] 'below an objective standard of reasonableness,' as indicated by 'prevailing professional norms.'"[6] When examining the representation of counsel pursuant to the first prong of the Strickland test, there is a strong presumption that counsel's conduct was professionally reasonable.[7] This standard is highly demanding. *Strickland* mandates that, when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of hindsight."[8]

Second, Delaware courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[9] To demonstrate prejudice, a movant must establish "a reasonable probability that, but for counsel's deficient conduct, the result of the proceeding would have been different. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."[10]

## III. DISCUSSION

The Court first addresses the inapplicability of the procedural bars. Mr. Clark timely filed his initial *pro se* motion and therefore is not barred by Rule 61(i)(1). Mr. Clark is also asserting ineffective assistance of counsel; therefore, Rule 61(i)(5) will

---

[4] *Strickland*, 477 U.S. at 687

[5] *Id.*

[6] *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Strickland*, 477 U.S. at 687–88).

[7] *Albury v. State*, 551 A.2d 53, 60 (Del. 1988).

[8] *Strickland* 466 U.S. at 689.

[9] *See e.g., Outten v. State*, 720 A.2d 547, 557 (Del. 1998).

[10] *Norcross v. State*, 36 A.3d 756, 766 (Del. 2011).

not procedurally bar his claim, assuming his motion succeeds in demonstrating ineffective assistance of counsel.

## A. CLAIM 1

Mr. Clark's first claim is that trial counsel failed to request a jury instruction regarding a choice of evils defense for the possession of a firearm by a person prohibited charge. The pattern jury instruction regarding the "choice of evils" defense permits a jury to find a defendant not guilty if "(1) the conduct was necessary as an emergency measure to avoid an imminent public or private injury; (2) the injury about to occur was the result of a situation that developed through no fault of the defendant; and (3) the imminent injury was so grave that, according to the ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweighed the desirability of avoiding the conduct that constituted the crime."

The *Strickland* Court instructs that reviewing courts should first assess whether a movant seeking postconviction relief has demonstrated actual prejudice.[11] A defendant must prove that his counsel's failure to request a particular instruction caused him prejudice because the "failure to request such an instruction will not always be prejudicial *per se.*"[12] "The prejudicial effect depends upon the facts and circumstances of each particular case."[13]

Upon review of the record, the Court finds that the jury was presented with all the facts and arguments that underpin the "choice-of-evils" jury instruction. Despite the Court's decision not to give such an instruction, Mr. Windett marshaled

---

[11] *Strickland*, 466 U.S. at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed").

[12] *Smith v. State*, 991 A.2d 1169, 1180 (Del. 2010).

[13] *Id.*

the relevant facts into an argument for acquittal of the possession of a firearm by a person prohibited charge. During his closing argument, Mr. Windett stated: "Now, the State may argue in rebuttal, because the State gets another opportunity to speak to you, that if you believe Mr. Clark acted in self-defense, he still possessed a firearm because he carried it away from the scene. And this is where your common sense comes in again. Was Mr. Clark still defending himself as he left the area? And when does the self-defense end? And should he have simply left the firearm there with the man who just attacked him and turn [sic] his back and walked away?"

Throughout the closing argument, Mr. Windett argued that Mr. Clark acted in self-defense and that his use of force was justifiable and reasonable, and that he should be acquitted of all charges. The Court instructed the jury prior to closing arguments that Mr. Clark could be acquitted of assault in the second degree, aggravated menacing, and reckless endangering if he "believed in the circumstances as they occurred that the force used was immediately necessary to protect himself against the use of unlawful force by another."[14]

Despite these efforts, the jury found that Mr. Clark was not acting in self-defense and thus that he did not believe his use of force was necessary to protect himself. This finding is inconsistent with the essence of Mr. Clark's claim of prejudice—that the jury was willing to find that his possession of the gun was justified had they been presented with an appropriate instruction that allowed them to do so. In fact, by finding that Mr. Clark did not act in his own defense, the jury rejected the Defense's version of the facts, and appeared to accept the version of events presented by the State. According to the State's account of the events, Mr. Clark was the aggressor, approaching Mr. Ventura's vehicle with a gun in his hand. The jury's verdict indicates that Mr. Clark was partially, if not entirely, at fault for

---

[14] A264.

the physical altercation and resulting injuries. Given this verdict, the jury certainly would not have found that the Mr. Clark was forced to take the gun because of "a situation that developed through no fault" of his own. Therefore, Mr. Windett's decision not to request a "choice of evils" instruction resulted in no prejudice to Mr. Clark, and he is not entitled to postconviction relief on this claim.

## B. CLAIM 2

Mr. Clark's second claim is that Mr. Windett was ineffective for stipulating that Mr. Clark was a person prohibited at the time the offense occurred. Here again, the Court begins its analysis by determining whether this stipulation prejudiced Mr. Clark. In this case, the parties stipulated that Mr. Clark was a person prohibited, but sanitized the indictment and did not reveal the nature of the underlying offenses. Indeed, the Court notes that the stipulation makes no reference to the reason why Mr. Clark was a person prohibited, *i.e.*, because he had previously been convicted of a felony. In his motion, Mr. Clark claims that the stipulation that he was a person prohibited from possessing a firearm "left the jury free to speculate how he became a person prohibited and allowed the jury to draw the impermissible conclusion that Mr. Clark was a person of bad character with a general criminal disposition."

Similar arguments have previously been found meritless by the Delaware Supreme Court. In *Frazier v. State*,[15] a defendant appealed from his conviction in Superior Court, arguing that he was prejudiced by the court's refusal to sever his possession of a firearm by a person prohibited charge.[16] The *Frazier* defendant argued that he was prejudiced because evidence of his prior felony would be put before the jury and "the jury could cumulate evidence or infer a general criminal

---

[15] 609 A.2d 668 (Table) 1992 WL 135149 (Del. 1992).
[16] *Id.* at *4.

8

intent."[17] The Court found that the "mere possibility the jury might misuse evidence" did not establish a sufficient ground for a showing of prejudice, particularly when "the jury was instructed not to use his status as a felon as evidence of guilt of the other charges."[18]

Here, the stipulation was even less prejudicial, mentioning only that Mr. Clark was "prohibited from purchasing, owning, possessing, or controlling a deadly weapon or ammunition for a firearm within the state," without mentioning that this was because of a felony conviction. No statement was ever made to the jury implying or informing them that persons prohibited from possessing firearms are necessarily or probably convicted felons.

Additionally, in this case, Mr. Clark chose to testify, and was cross examined on certain of his prior criminal convictions, namely, that he was twice convicted of shoplifting, once in 2008 and again in 2009. When instructing the jury, the Court admonished that the jury "may not consider the evidence of the defendant's prior convictions in deciding his guilt or innocence." Therefore, even if no stipulation had been made, the jury would still have heard actual evidence—not mere implications—of some of Mr. Clark's prior convictions, and thus potentially made an inference of general criminal intent. Of course, this was an inference the jury was explicitly instructed not to make. The Court finds that the stipulation did not prejudice Mr. Clark in any way.

---

[17] *Id.*

[18] *Id.*

## IV.   CONCLUSION

**WHEREFORE**, Mr. Clark has failed to show that he was prejudiced, he has not satisfied the requirements set forth in *Strickland* and adopted by Delaware's Supreme Court in *Albury v. State*,[19] and he therefore cannot succeed in his claims of ineffective assistance of counsel. After a *de novo* review of the record in this action, and for the reasons stated in the Commissioner's Recommendation, Mr. Clark's Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Judge

NEP/wjs
oc:  Prothonotary
cc:  The Honorable Andrea M. Freud
     Gregory R. Babowal, Esquire
     Adam D. Windette, Esquire

---

[19] 551 A.2d 53, 58 (1988).